## STATE v. FRANK NEWTON AND ROMIE WEST.

### (Filed 21 November, 1934.)

1. **Automobiles C n—Evidence that defendants operated car while intoxicated and failed to stop after inflicting injury held for jury.**

   All the evidence in this case tended to show that an automobile, driven in a careless and reckless manner from one side of the highway to the other, struck and injured two pedestrians who were standing on the shoulders of the highway, or in the ditch on the side of the highway to the left of the driver of the car, and that after inflicting the injury the driver did not stop the car. There was testimony that the car which struck the pedestrians was a dark blue Ford roadster with yellow wheels and tan top, and that two men were riding in it at the time of the accident. About twenty minutes after the accident, defendants' dark blue Ford roadster, with yellow wheels and tan top, going in the same direction as the car which struck the pedestrians, was found wrecked on the highway a short distance from where the pedestrians were injured, and defendants were found at the scene of the second accident in an intoxicated condition. There was testimony that no other car passed that part of the highway between the time of the injury to the pedestrians and the finding of defendants' car: *Held*, the evidence, together with other incriminating circumstantial evidence, was sufficient to be submitted to the jury as to the identity of the defendants as the occupants of the car which injured the pedestrians, and their motions as of nonsuit in prosecutions for operating a car while under the influence of intoxicants, N. C. Code, 2621 (44), (45), and failing to stop after inflicting the injury, N. C. Code, 2621 (71) (a), were properly denied.

**2. Criminal Law G n—Sufficiency of circumstantial evidence.**

While circumstantial evidence is a recognized and accepted instrumentality in ascertaining the truth, when relied upon in a criminal prosecution it should tend to establish guilt to a moral certainty, and exclude any other reasonable hypothesis, but it should be submitted to the jury if it reasonably conduces to the conclusion of guilt as a fairly logical and legitimate deduction, it being for the jury to decide whether it establishes guilt beyond a reasonable doubt.

**3. Criminal Law L e—Error on one count may be cured by verdict of guilty on another count of equal dignity.**

Where the jury renders a verdict of guilty on both counts in a bill of indictment, error in the trial or charge of the court upon one count is cured by the verdict on the other count where the counts are of the same grade and punishable alike, and only one sentence is imposed, and the error in respect to one count could not affect the verdict on the other.

**4. Criminal Law L d—**

Defendants' briefs in this case held not to comply with Rule 28 in that they do not contain the exceptions and assignments of error, properly numbered, with reference to the printed record.

APPEAL by defendants from *Daniels, J.,* and a jury, at February Term, 1934, of GREENE. No error.

The defendants were put on trial under the following bill of indictment: "The grand jurors for the State, upon their oath, present: That Frank Newton and Romie West, late of the county of Greene, on 30 April, 1933, with force and arms at and in the county aforesaid, unlawfully, wilfully, and feloniously did drive and operate an automobile on the public highway while they, the said Frank Newton and Romie West, were under the influence of intoxicating liquor, opiates or drugs, and in a reckless and careless manner, and while so doing unlawfully, wilfully and maliciously did in and upon two children, Inez Turner and Helen Beaman, with a certain deadly weapon, to wit, an automobile, make an assault, and them, the said Inez Turner and Helen Beaman, unlawfully, wilfully, feloniously, and maliciously did wound and seriously injure, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

"And the grand jurors for the State, upon their oaths aforesaid, do further present: That on said day and year aforesaid, at and in the county and State aforesaid, Frank Newton and Romie West, late of said county, with force and arms, unlawfully, wilfully, and feloniously did fail to stop their automobile and give their names, addresses, license number, and registration number and render assistance or offer to render assistance to the said Inez Turner and Helen Beaman, after having run into and injured said Inez Turner and Helen Beaman, while operating their said automobile on the public highway, contrary to the form of the

statute in such case made and provided, and against the peace and dignity of the State.   D. M. Clark, Solicitor."

The defendants plead not guilty.   The jury rendered a verdict of guilty on both counts, and judgment was rendered by the court below. The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court.   The necessary ones and material facts will be set forth in the opinion.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Bruton for the State.*
*Shaw & Jones for defendants.*

CLARKSON, J.   There are two counts in the bill of indictment against the defendants, under the following statutes: North Carolina Code, 1931 (Michie), sec. 2621 (44) and (45), 2621 (71) (a).

Section 2621 (44) is as follows: "It shall be unlawful and punishable as provided in section 2621 (101) of this act for any person, whether licensed or not, who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon the highway within this State."

Section 2621 (45) is as follows: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished as provided in section 2621 (102)."

Section 2621 (71) (a) is as follows: "The driver of any vehicle involved in an accident resulting in injury or death to any person shall immediately stop such vehicle at the scene of such accident, and any person violating this provision shall upon conviction be punished as provided in section 2621 (103)," etc.

Section 2621 (51) is as follows: "Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway, and shall drive a slow-moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway, and except when overtaking and passing another vehicle, subject to the limitation applicable in overtaking and passing set forth in sections 2621 (54) and 2621 (55)."   Public Laws of North Carolina, 1927, ch. 148, sec. 9.

The defendants introduced no evidence and at the close of the State's evidence the defendants made a motion for judgment of nonsuit.   Code of 1931 (Michie), sec. 4643.   The court below overruled this motion, and in this we can see no error.

The evidence on the part of the State was circumstantial as to the identity of the defendants who injured Inez Turner and Helen Beaman, but we think sufficient to be submitted to a jury.

As to the injury there can be no dispute. Two little children, Inez Turner and Helen Beaman, on Sunday, 30 April, 1933, between one and two o'clock, were with Helen Jones, thirteen years of age, on the highway on the left side, coming from Wilson towards Farmville. The car that struck the children was coming towards Farmville. The children were going in the same direction as the car was traveling. The children were on the left side, on the dirt shoulders of the main traveled concrete highway. The older girl, when she saw the car coming, told the children "the car was coming . . . and we better get off the highway. . . . We got in the drain ditch and when I jumped up in the field." It can be inferred that the children were in the drain ditch when hit— at least, they were off the concrete, on the dirt shoulders, a place they had a right to be. Both legs of one of the children were broken and one leg of the other, by the car that struck them.

Mr. Beaman testified, in part: "When it passed by my place it was going around 20 or 25 miles and it was hitting the dirt, zigzagging across the road."

The car that struck the children was off the concrete and on the wrong side of the road.

Was there sufficient evidence to be submitted to the jury that the car that struck the children was under the control of the two defendants? We think so.

Margaret Jones testified, in part: "In approaching the road I saw they were coming and they were off the highway. I saw the automobile that struck them, immediately afterwards, when it passed my house. It was a dark-colored car with yellow wheels and don't know what color of the top. I didn't notice that. It was a dark car, with yellow wheels. . . . The time the children were struck by the car with yellow wheels, and the time Mr. Pierce got there, no other cars passed there."

Cedric Pierce testified, in part: "Saw these children lying in the edge of the field. Before I saw them I met a Ford roadster, a 1930 or 1932 model, and it was painted blue with yellow wheels and tan top. After passing them, and before getting to the children, I went about a quarter of a mile, my speed was 30 or 35 miles." When the witness got where the children were he passed them and turned and went back.

Chief Taylor testified, in part: "In consequence to a call, I went out on the Farmville and Wilson highway, about a quarter of a mile from Farmville on the Farmville-Wilson highway. I found a Ford roadster wrecked, with a dark body, yellow wheels and yellow top. Wasn't anybody on the car when I got to it. Mr. Newton and Mr. West were there.

Mr. Newton was sitting across the road by a tobacco barn and Mr. West was out in the road. Both of them were drinking some, I think, not right drunk, had the odor on their breath. The car was headed towards Farmville. Q. What side of the road at the time you were there? A. Almost in the middle of the road and ran into another car, two cars ran together. I don't know who was to blame. . . . I had just eaten dinner, which was about 1 o'clock. It was soon after dinner, the best of my recollection. After I received the call, I went right on. I wasn't over ten minutes, I don't think. . . . Q. Chief Taylor, what description did you receive of the car, when you received this message? A. Sam, . . . ; Court: Go ahead. A. The description I got of the roadster, a car of dark body with yellow wheels and tan top."

Mrs. Beaman testified, in part: "I saw the automobile that has been described; I saw it pass Mr. Jenkins'; I don't remember, it was a dark car with yellow wheels. That was about 15 minutes before these children were returned to my house. No other car passed after that car passed and before the children were brought back to the house. Between 1 and 2 o'clock on Sunday. All I heard, that it was a dark car with yellow wheels; I didn't hear whether it was a coach or sedan. I didn't notice that."

Kirby Cobb testified, in part: "I went over to Farmville after the prisoners. I reached there around 3 o'clock, 2 or 3 o'clock. They were in jail in Farmville. At that time they were drunk."

Circumstantial evidence is not only recognized and accepted instrumentality in ascertainment of truth, but in many cases is quite essential to its establishment.

In cases where State relies upon circumstantial evidence for conviction, circumstances and evidence must be such as to produce in minds of jurors moral certainty of defendant's guilt and to exclude any other reasonable hypothesis, but evidence should be submitted to them if there is any evidence tending to prove fact in issue, or which reasonably conduces to its conclusion as fairly logical and legitimate deduction, and not merely such as raises only suspicion or conjecture, and it is for the jury to say whether they are convinced from evidence of defendant's guilt beyond reasonable doubt. *S. v. McLeod,* 198 N. C., 649.

What are the circumstances? First: Two drunken men in a "dark-colored car with yellow wheels, a Ford roadster." . . . "It was painted blue with yellow wheels and tan top."

Second: "It was going around 20 or 25 miles and it was hitting the dirt—zigzagging across the road."

Third: It was on the wrong side of the road and going the direction and behind the two little girls, who got off the dirt highway and got in the drain ditch. The car left the concrete and struck the two children

and broke two legs of one and one leg of the other and never stopped. No other car passed. This was between 1 and 2 o'clock.

Fourth: Chief Taylor was called immediately and a description given him, and he found a Ford roadster wrecked, with a dark body, yellow wheels and yellow top, the car was headed towards Farmville, almost in the middle of the road—both of defendants indicated they were drinking and had had another wreck. The chief had just eaten dinner about 1 o'clock and it was soon after his dinner and after he received the call, he went right on and it wasn't over ten minutes. Both defendants were there—West out in the road and Newton sitting across the road by a tobacco barn. There was no evidence that any others but these two defendants were at the wrecked car. The two men in the Ford roadster were intoxicated when the children were hit and intoxicated also when arrested shortly afterward.

Fifth: All the witnesses testified it was a Ford roadster with yellow wheels, and two men in it, that struck the children, and their conduct indicated drinking, and shortly afterwards a Ford roadster was found with yellow wheels and the defendants at or near the car semi-intoxicated. Kirby Cobb, shortly afterwards, went to the jail in Farmville to get them and at that time they were both drunk.

We think the evidence sufficient for the jury to pass on. We can see no error in the charge of the court below, taking it as a whole. *S. v. Parker,* 198 N. C., 629 (633).

The court below fully charged criminal negligence, as different from civil negligence, and what constituted criminal negligence, and followed the law as set forth in *S. v. Agnew,* 202 N. C., 755 (758). There was a verdict of guilty on both counts.

In *S. v. Sheppard,* 142 N. C., 586 (589), it is said: "It is well established that such a verdict on an indictment containing several counts charging offenses of the same grade and punishable alike, is a verdict of guilty on each and every count; and if the verdict on either count is free from valid objection, there being evidence tending to support it, the conviction and sentence for that offense will be upheld. It was accordingly held for law in this State that: 'When there is a general verdict of guilty on an indictment containing several counts, and only one sentence is imposed, if some of the counts are defective, the judgment will be supported by the good count; and in like manner, if the verdict as to any of the counts is subject to objection for admission of improper testimony or erroneous instruction, the sentence will be supported by the verdict on the other count, unless the error was such as might or could have affected the verdict on them.' *S. v. Toole,* 106 N. C., 736." *S. v. Switzer,* 187 N. C., 88 (96); *S. v. Jarrett,* 189 N. C., 516 (519).

An examination of the defendant's brief discloses that it does not comply with Rule 28, in that it does not contain, properly numbered, the several grounds of exception and assignments of error with reference to printed pages of transcript and the authorities relied on classified under each assignment. It is impossible to determine from reading the first two paragraphs of the argument in defendant's brief just what exceptions or assignments of error he has reference to. *S. v. Bryant,* 178 N. C., 702 (708).

We see no prejudicial or reversible error on the record.