## STATE v. LeROY CREECH.

(Filed 25 November, 1936.)

**Automobiles G b—In absence of evidence that owner knew driver was intoxicated, owner may not be held criminally liable.**

The evidence of the State tended to show that defendant was the owner of the car which struck and killed a pedestrian, that defendant was drunk and was riding in the car at the time, and that the driver thereof was intoxicated. Defendant's evidence tended to show that he did not know the driver had taken a drink, that he was so drunk when he and the driver left an inn that he did not know when they left or where the driver was going. *Held:* The burden was on the State to prove that defendant knew of the driver's condition and was directing him in the operation of the automobile, and in the absence of any evidence that defendant knew the driver was intoxicated, defendant's motion to nonsuit in this prosecution for manslaughter should have been granted.

CLARKSON, J., dissenting.

APPEAL by the defendant Creech from *Daniels, Emergency Judge,* at April Term, 1936, of SAMPSON. Reversed.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*Faircloth & Fisher, W. I. Godwin, and L. L. Levinson for defendant, appellant.*

SCHENCK, J. The appellant and one A. H. Lewis were tried jointly and convicted of manslaughter, upon a bill of indictment charging them with the felonious slaying of C. L. Thaggard.

The evidence for the State was to the effect that about 5 o'clock a.m., on 22 March, 1936, near Clinton, an automobile, driven by Lewis and owned by the appellant Creech, ran upon Thaggard, who was walking on Highway No. 23, and carried him seven-tenths of a mile into the town of Clinton before stopping; that when the car stopped Lewis and Creech got out and reported to the officers of the town that they had run over something up the street and wanted them to go see what it was, and upon investigation the dead body of Thaggard was found lying in front of

the automobile where it had stopped; that Lewis was under the influence of liquor, and "Creech was a whole lot drunker than Lewis was"; that Lewis stated he was driving the car and he thought Creech was asleep. The State offered no eye-witness to the actual collision of the automobile with the deceased.

When the State had produced its evidence and rested its case, the defendant moved to dismiss the action and for judgment of nonsuit, which motion was refused, and defendant excepted. C. S., 4643.

The defendant then introduced evidence tending to prove that he left his home in Johnston County about 7:30 p.m. and went to his brother's store; that he was driving his own car, and that the codefendant Lewis, his tenant, was in the car with him; that they stayed at his brother's store till about 10:30 p.m., and then went to Catch-Me-Eye Inn, and that Lewis drove the car from his brother's store to the inn; that they stayed at the inn until around 2 o'clock in the morning; that before leaving home the appellant "drank a couple of swallows before supper and two more after;" and that he "drank some more" at his brother's place, and at the inn he drank beer, and when Lewis drove the car off from Catch-Me-Eye Inn he (appellant) was drunk and didn't know what time they left or where Lewis intended to drive; that Lewis refused a proffered drink before they left home, and that appellant never saw Lewis take a drink during the trip and did not know that Lewis was drinking on the trip; that appellant did not know anything that happened on the trip of about 38 miles from Catch-Me-Eye Inn to Clinton until Lewis waked him up and told him he had struck something.

After all of the evidence in the case was concluded, the defendant renewed his motion to dismiss the action and for judgment of nonsuit, which motion was denied, and defendant excepted. C. S., 4643.

We think, and so hold, that the motion to dismiss the action and for judgment of nonsuit should have been granted. Viewing the evidence in the light most favorable to the State, all that it establishes is that the car that struck the deceased was the property of the appellant, and that he was in the car at the time, and that the driver of the car was intoxicated. There is no evidence that the appellant ever saw the driver, his codefendant, take a drink or knew that the driver was under the influence of liquor, or that the appellant was in any way directing the driving of the car. Mere ownership of the car is not sufficient to fix the owner with liability for the negligent acts of the driver. *Linville v. Nissen,* 162 N. C., 95; *White v. McCabe,* 208 N. C., 301.

This case is distinguishable from *S. v. Trott,* 190 N. C., 674, relied upon by the State. In that case Trott was the owner of the car and he and his codefendant, Michael, had been drinking together, and upon the appearance of an officer Trott directed Michael "to get on the wheel and

get away," while in this case there is no evidence tending to show that the appellant Creech had any knowledge of the fact that his codefendant, the driver of the car at the time it collided with the deceased, was drinking, or that the appellant was in any way directing the driving of the car. In the absence of any evidence tending to show that at any time before Lewis took the wheel or during the time Lewis was driving the appellant had any knowledge of the intoxicated condition of Lewis, he cannot be held for any criminal negligence growing out of such condition.

The burden of establishing knowledge of the intoxicated condition of the driver on the part of the appellant was upon the State. This knowledge is not shown by the mere fact that the appellant owned the car and was in it at the time, since the undisputed evidence, both of the State and of the appellant, tends to show that appellant was too drunk to be conscious of what was going on.

The judgment of the Superior Court is

Reversed.


CLARKSON, J., dissenting: There are two classes of evidence, direct and circumstantial. I think if only the direct evidence is considered the majority opinion is correct, but the circumstantial evidence is fully sufficient to submit the case to the jury, and I think the judgment of the court below correct.

In *S. v. Newton,* 207 N. C., 323 (327), speaking to the subject, it is said: "Circumstantial evidence is not only recognized and accepted instrumentality in ascertainment of truth, but in many cases is quite essential to its establishment." *S. v. Coffey, ante,* 561 (563).

It is well settled in this and other jurisdictions that where the owner of an automobile consents to its being operated in his presence by a driver whom he knows to be intoxicated or otherwise incompetent, he may be held criminally responsible for the culpable negligence of that driver. This doctrine is supported by an abundance of cases.

In *S. v. Trott,* 190 N. C., 674 (677-8), it is said: "That the defendant was intoxicated may be conceded; but his intoxication was voluntary, and voluntary drunkenness usually furnishes no ground of exemption from criminal responsibility. In Clark's Criminal Law it is said: 'When a person voluntarily drinks and becomes intoxicated, and while in such condition commits an act which would be a crime if he were sober, he is nevertheless responsible, the settled rule being that voluntary drunkenness is no excuse. A person may be so drunk when he commits an act that he is incapable, at the time, of knowing what he is doing; but in case of voluntary intoxication a man is not the less responsible for the reasonable exercise of his understanding, memory, and will.' C. 5, sec. 27. And in *S. v. John,* 30 N. C., 330: 'All the writers of the

criminal law from the most ancient to the most recent, so far as we are aware, declare that voluntary drunkenness will not excuse a crime committed by a man, otherwise sane, whilst acting under its influence,' " citing numerous authorities.

A. H. Lewis, the driver of the car, was convicted with LeRoy Creech of manslaughter. Lewis did not appeal. Was there such circumstantial evidence for the jury to consider that the defendant Creech knew, or in the exercise of ordinary care ought to have known, that Lewis was under the influence of liquor?

N. C. Code, 1935 (Michie), sec. 2621 (44), is as follows: "It shall be unlawful and punishable, as provided in section 2621 (101) of this act, for any person, whether licensed or not, who is an habitual user of narcotic drugs, or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon the highway within this State."

Under C. S., 4643, the evidence is to be taken in the light most favorable to the State, and it is entitled to the benefit of every reasonable intendment and every reasonable inference to be drawn therefrom. If there is any evidence on the whole record of defendant's guilt, the conviction will be sustained. Defendant's evidence is discarded. *S. v. Lawrence,* 196 N. C., 562 (564).

The defendant LeRoy Creech was the owner of a Master-6 Chevrolet automobile. He lived in Johnston County, about 9 miles from his brother's filling station, and the same distance from "Catch-Me-Eye" (a road house). He took two drinks before supper and two more after, he then, about 7:30 o'clock, drove his car to his brother's filling station. He drank some liquor at his brother's place. Then Lewis took the wheel of the car and drove to "Catch-Me-Eye." Both he and Lewis were in the dining room at "Catch-Me-Eye" many hours, Creech claiming he was drunk from beer drinking. Lewis had talked to him about taking a trip to Sampson County to see his son. They left about 2:00 o'clock, or after, Lewis at the wheel. No one put Creech in the car, the natural conclusion is that he was sober enough to walk to the car when he left "Catch-Me-Eye." Was Lewis under the influence of liquor and did Creech know it? The natural conclusion is that they were drinking at "Catch-Me-Eye" together, and when Creech entered the car Lewis was under the influence of liquor. Why? Because when Lewis struck C. L. Thaggard (the deceased), he must have been driving at a terrific speed. The front of the car was all mashed in. The deputy sheriff testified: "The radiator pushed back, right-hand light knocked out, bumper almost broken in two, fender bent down, and windshield shattered on the right-hand side. I asked those fellows where they struck him and they said, 'Up the street about 30 steps.' . . . Mr. Lewis was under the influ-

ence of liquor and Mr. Creech was more so than Lewis. . . . Mr. Lewis said he was driving the car. Mr. Creech said the car belonged to him."

The deceased's body was carried on the bumper of the car for 7/10 of a mile before the car was brought to a halt. Both legs were broken below the knees, chest crushed, neck broken, and also back and left arm broken.

Carlyle Jackson testified: "Lewis said they went to Creech's brother's filling station and stayed until about 10:30 or 11:00 o'clock, and then came on to 'Catch-Me-Eye' and stayed there until they left for Clinton. Mr. Lewis said he thought he struck something and that he told Creech that he had struck a dog, hog, or something on the road. They came on and the radiator began to leak. They stopped the car and saw a man's hand sticking up."

Dr. J. S. Brewer testified: "I saw both the defendants that morning and Mr. Lewis made a statement that he was driving the car and when they got out of the car they thought they had hit something 25 or 30 feet back up the street. I had a conversation with Mr. Creech and he said practically the same thing Mr. Lewis did."

There is other circumstantial evidence. The jury of 12 was composed of men "of good moral character and of sufficient intelligence." They convicted both Lewis and Creech of manslaughter. Creech left his home and his wife and four children, on Saturday evening, in an automobile, and took with him his tenant, Lewis. He started drinking before he left, drank at his brother's filling station, turned the wheel over to his tenant, Lewis, and went to "Catch-Me-Eye" and was drunk, as he says, on beer. But he got into the automobile early Sunday morning. The natural inference is that Lewis was under the influence of liquor, and Creech knew it, for his speed was so terrific shortly afterwards that when he struck Thaggard it crushed him worse than a cannon ball would, and carried him 7/10 of a mile (3,696 feet), and when Thaggard was dropped from the bumper of the car, they thought they had run over something and did not know whether it was a "dog, hog, or something." Day was just breaking that Sabbath morning when these drunken men, Lewis at the wheel and Creech, the owner of the car, crushed out the life of an innocent man. Judge Daniels tried the case with his usual great care, applying the law applicable to the facts. Twelve men convicted them. The tenant goes to the penitentiary and Creech, the landlord, goes unwhipped of justice. I respectfully disagree with the nonsuit.