SYLVIA YOUSE, Plaintiff-Appellant v. DUKE ENERGY CORPORATION, Defendant-Appellee

No. COA04-797

(Filed 5 July 2005)

**1. Appeal and Error— violations of appellate rules—issues clear—no dismissal**

Violations of the Rules of Appellate Procedure did not result in dismissal of the appeal where the Court of Appeals was able to determine the issues on appeal and defendant was put on sufficient notice of the issues.

**2. Collateral Estoppel and Res Judicata— federal and state claims—identical underlying factual issues**

Collateral estoppel barred plaintiff's state claims for discrimination in the termination of her employment based on age and disability where her companion federal case had determined identical underlying factual issues.

**3. Collateral Estoppel and Res Judicata— negligent infliction of emotional distress—prior federal determination**

Collateral estoppel barred plaintiff's state claim for negligent infliction of emotional distress based on breach of public policy on age and disability discrimination. A federal court had already determined that no age or disability discrimination occurred in her termination.

**4. Collateral Estoppel and Res Judicata— claim splitting— collateral estoppel not waived**

A defendant does not waive collateral estoppel by consenting to claim splitting.

**5. Collateral Estoppel and Res Judicata— federal action—not simultaneous**

A federal action filed on the same day as a state action was not a subsequent or simultaneous action for collateral estoppel where the federal action was complete by the time the state action was heard.

Judge TYSON dissenting.

Appeal by plaintiff from order and judgment entered 11 February 2004 by Judge Anderson Cromer in Superior Court, Guilford County. Heard in the Court of Appeals 2 February 2005.

*Hicks McDonald Noecker LLP, by David W. McDonald, for plaintiff-appellant.*

*Constangy, Brooks & Smith, LLC, by John J. Doyle, Jr. and Jill Stricklin Cox, for defendant-appellee.*

McGEE, Judge.

Sylvia Youse (plaintiff) was employed by Duke Energy Corporation (defendant) from 8 October 1984 to 21 March 2002. Plaintiff became a Quality Assurance Analyst (QAT Analyst) for defendant on 1 June 1999. The QAT Analyst job description contained the following provision:

I. POSITION PURPOSE

Monitors and evaluates the quality of inbound telephone calls. Document[s] quality issues and performance measures for management review . . . . Provide[s] information to assist in the feedback and formal education process of individuals on the phone. Provides subject matter expertise regarding call segment processes and call criteria. Informal feedback and auditing of non-call work is also summarized and audited to assure quality issues are addressed.

II. MAJOR ACCOUNTABILITIES/ESSENTIAL DUTIES

. . . .

    2. . . .

        . . . .

B. Maintains appropriate relationships and credibility needed to assure that quality scores are used effectively to improve performance of Customer Service Specialists.

Plaintiff and her husband owned a house in Mebane, North Carolina (the Mebane house), which they leased to their son and daughter-in-law. Defendant provided electrical service to the Mebane house. Plaintiff's son and daughter-in-law arranged to move out of the Mebane house in February 2002. Electrical service was scheduled to be changed from plaintiff's daughter-in-law's name to plaintiff's name on 18 February 2002. However, the electrical service was disconnected on 11 February 2002.

Plaintiff telephoned defendant on 11 February 2002 and inquired as to why the electrical service was not working. Plaintiff spoke with customer service representative Demishie Grier (Grier), who informed plaintiff that the electrical service had been disconnected for non-payment. Plaintiff and Grier began to disagree as to whether the electrical service should be turned back on. When plaintiff asked to speak with a supervisor, Grier stated that Grier could not transfer the call but would have a supervisor call plaintiff. Plaintiff stated that she could not be called back since she was on a cell phone and had an unreliable connection. Plaintiff and Grier thereafter ended their telephone conversation.

Plaintiff then telephoned call service response and spoke with Billy Kingry (Kingry), a service response specialist. Plaintiff had originally hired Kingry to work for defendant and was Kingry's former supervisor. Plaintiff asked Kingry to look at the Mebane house account and told him that she needed electrical service at the Mebane house. Kingry then arranged to have the electrical service turned back on at the Mebane house. This reconnection of the electrical service was in violation of defendant's "non-pay reconnect" guidelines, which provide that a reconnect of an account is only available once payment has been made on the account. Kingry told Yolanda Peterson (Peterson), a HR Consultant for defendant, that he did "ma[k]e an exception for [plaintiff] because of [Kingry and plaintiff's] previous relationship and [plaintiff's] knowledge of how things work."

The following day, on 12 February 2002, defendant determined that the electrical service at the Mebane house had been erroneously reconnected. The account was scheduled for another non-pay disconnect, and a disconnect notice was delivered to the Mebane house.

Peterson received an email on 18 February 2002 from Dawn Morrison (Morrison), plaintiff's supervisor. The email stated that plaintiff may have engaged in "very inappropriate conduct." The email also recommended that an investigation take place. Peterson began an investigation into plaintiff's conduct, during which Peterson interviewed numerous individuals and reviewed the history of the Mebane house account. Plaintiff was removed from defendant's employment on 8 March 2002 pending the completion of Peterson's investigation.

During the course of the investigation, Peterson learned that in January 2002, plaintiff had accessed her daughter-in-law's account at the Mebane house. This activity was in violation of defendant's procedures which prohibit employees from working on their own, their co-workers,' or their family members' electrical service accounts. Peterson also determined that plaintiff's conduct, when plaintiff spoke with Grier, included "hostile and intimidating statements" and an "attempt to persuade . . . Grier to circumvent established call procedures." Finally, Peterson found that plaintiff "circumvent[ed] . . . customer service processes" when she called Kingry directly in an effort to restore the electrical service, and that she made false statements to Kingry about the Mebane house account. Due to this conduct, Peterson determined that plaintiff was unable to satisfy the requirements of her position as a QAT Analyst. Peterson found that plaintiff

> compromised her credibility and her relationship with [defendant's] employees when she completely disregarded the very same customer service procedures that she was charged with administering, made intimidating statements to a customer service specialist and service response employee, and abused her position [with defendant] to achieve her own personal objectives.

Peterson recommended to Lynetta Chisolm (Chisolm), General Manager of Customer Contact Services, that plaintiff be discharged. Chisolm agreed, and plaintiff's employment with defendant was terminated on 21 March 2002.

Plaintiff filed a complaint against defendant on 20 September 2002, alleging wrongful termination in violation of public policy based on age and handicap discrimination, negligent infliction of emotional distress, a violation under the Wage and Hour Act, N.C. Gen. Stat. § 95-25.1-95-25.25, and punitive and special damages. That same day, plaintiff filed a complaint in the United States District

Court for the Middle District of North Carolina (Middle District) alleging identical facts to those in the state court complaint. The complaint filed in the Middle District alleged violations of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621-634, the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101-12213, and the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001-1461. Defendant filed a motion for summary judgment in the Middle District case on 24 October 2003. In an order and recommendation dated 15 December 2003, a magistrate judge recommended that defendant's motion for summary judgment be granted. *Youse v. Duke Energy Corporation*, 1:02CV00808 (M.D.N.C. 2003). Plaintiff objected to the recommendation, and a district court judge made a *de novo* determination of the magistrate judge's recommendation. *See* 28 U.S.C. § 636 (b)(1) (2004). The district court judge adopted the magistrate judge's recommendation and ordered that defendant's motion for summary judgment be granted as to all claims on 23 January 2004.

Defendant filed a motion for summary judgment in state court on 21 January 2004. The trial court granted defendant's motion in an order entered 11 February 2004. Plaintiff appeals.

I.

[1] We first address defendant's argument that plaintiff's appeal should be dismissed due to plaintiff's violations of the North Carolina Rules of Appellate Procedure. Defendant specifies that plaintiff has violated the Rules by: (1) failing to reference the record page numbers on which her assignments of error appear, *see* N.C. R. App. P. 28(b)(6); (2) referencing the incorrect assignment of error in support of Argument D in her brief, *see id.*; (3) using argumentative language when summarizing the facts of the case, *see* N.C. R. App. P. 28(b)(5); (4) failing to reference pages of the transcript or record on appeal in connection with her factual assertions, *see id.*; (5) failing to include relevant portions of statutes in the Appendix to her brief, *see* N.C. R. App. P. 28(d)(1)(c); (6) using the incorrect font size for the footnotes in her brief, *see* N.C. R. App. P. 26(g); (7) providing the improper citations for several of the authorities on which plaintiff's brief relies, *see* N.C. R. App. P. 28(b)(6); and (8) filing her Appeal Information Statement two weeks after the date her brief was due to be filed, *see* N.C. R. App. P. 41(b)(2).

Although we recognize that plaintiff failed to comply with several of our Rules of Appellate Procedure, we do not find that dismissal of

the appeal is proper in this case. Despite the Rules violations, we are able to determine the issues in this case on appeal. Furthermore, we note that defendant, in filing a brief that thoroughly responds to plaintiff's arguments on appeal, was put on sufficient notice of the issues on appeal. *See Viar v. N.C. Dep't of Transportation*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). Since plaintiff's Rules violations are not "so egregious as to invoke dismissal[,]" *Symons Corp. v. Insurance Co. of North America*, 94 N.C. App. 541, 543, 380 S.E.2d 550, 552 (1989), we elect to review the significant issues of this appeal pursuant to N.C. R. App. P. 2. *See Symons*, 94 N.C. App. at 543, 380 S.E.2d at 552.

II.

[2] Plaintiff's first assignment of error contends that the trial court erred in granting summary judgment in favor of defendant on plaintiff's claim of wrongful discharge against public policy. The trial court's order stated the following:

> 1. Defendant is entitled to summary judgment on plaintiff's claim of wrongful discharge against public policy. . . . The same issues that are dispositive of plaintiff's claim of wrongful discharge against public policy already have been litigated to final judgment by the [Middle District] in plaintiff's companion lawsuit against defendant . . . . Therefore, plaintiff's claims in this state court proceeding are barred by the doctrine of collateral estoppel.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The moving party to a summary judgment motion can prevail by showing that "the other party cannot overcome an affirmative defense which would bar the claim." *Caswell Realty Assoc. v. Andrews Co.*, 128 N.C. App. 716, 720, 496 S.E.2d 607, 610 (1998). Collateral estoppel is an affirmative defense. *See* N.C. Gen. Stat. § 1A-1, Rule 8 (2003); *Johnson v. Smith*, 97 N.C. App. 450, 453, 388 S.E.2d 582, 584, *disc. review denied*, 326 N.C. 596, 393 S.E.2d 878 (1990).

Collateral estoppel prevents "the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Whitacre P'ship v. Biosignia, Inc.*,

358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). An action is barred under the doctrine of collateral estoppel "even if the first adjudication is conducted in federal court and the second in state court." *McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 52, 542 S.E.2d 227, 231, *disc. review denied*, 353 N.C. 452, 548 S.E.2d 527 (2001). Collateral estoppel will apply when: "(1) a prior suit result[ed] in a final judgment on the merits; (2) identical issues [were] involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined." *McDonald v. Skeen*, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211, *disc. review denied*, 356 N.C. 437, 571 S.E.2d 222 (2002) (citing *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 429-30, 349 S.E.2d 552, 557-58 (1986)). In determining what issues were actually litigated or decided by the earlier judgment, the court in the second proceeding is " 'free to go beyond the judgment roll, and may examine the pleadings and the evidence [if any] in the prior action.' " *Miller Building Corp. v. NBBJ North Carolina, Inc.*, 129 N.C. App. 97, 100, 497 S.E.2d 433, 435 (1998) (alteration in original) (quoting 18 James W. Moore et al., *Moore's Federal Practice* § 132.03 [4][i] (3rd ed. 1997)).

Although plaintiff's companion Middle District case was based on different legal claims than the case before us, the state court and Middle District cases involved identical underlying factual issues. "To the extent the U.S. District Court ruled on these issues, plaintiff is barred from relitigating the issues in state court." *Williams v. City of Jacksonville Police Dep't*, 165 N.C. App. 587, 594, 599 S.E.2d 422, 429 (2004). We conclude that plaintiff's state law claim that she was discriminated against on the basis of her age and disability in violation of North Carolina's public policy is barred by collateral estoppel.

N.C. Gen. Stat. § 143-422.2 (2003) states: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination . . . on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." Our Supreme Court has directed that "we look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *Dept. of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983); *see also Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 685-86, 504 S.E.2d 580, 584 (1998), *disc. review denied*, 350 N.C. 91, 527 S.E.2d 662 (1999).

In this case, the Middle District considered plaintiff's claims for both age discrimination under the ADEA, and disability discrimination under the ADA. While plaintiff argues that the Middle District never addressed the issue of whether North Carolina public policy was violated, plaintiff also "contends that her discharge was motivated by defendant's discrimination based upon her age and disability," the same factual issues decided by the Middle District.

The Middle District granted summary judgment to defendant on plaintiff's ADEA claim since, although plaintiff was able to establish a prima facie case of discrimination, defendant "ha[d] proffered substantial evidence of a legitimate, nondiscriminatory reason for [p]laintiff's discharge, and [p]laintiff ha[d] failed to produce sufficient evidence that [d]efendant's proffered reason [wa]s a pretext for discrimination." Specifically, the Middle District found that "[d]efendant's evidence demonstrates that [p]laintiff violated [defendant's] policy against working orders to a relative's account, engaged in inappropriate behavior with a customer service specialist over the telephone, and abused her status as a QAT analyst and former supervisor to circumvent established company procedures." Since the Middle District determined that plaintiff had failed to prove that defendant's proferred reason for plaintiff's termination was a pretext for discrimination, plaintiff's state law claim based on the same factual allegation of age discrimination is collaterally estopped.

Similarly, the Middle District granted summary judgment to defendant on plaintiff's ADA claim. The Middle District found that plaintiff had failed to even establish a prima facie case of disability discrimination:

Plaintiff has not offered any further evidence of actions by [defendant] which would tend to show resentment of or animus towards [p]laintiff because of her "disability." Rather, the record evidence demonstrates a long history of accommodations by [defendant] for [p]laintiff's personal and health needs. Furthermore, [p]laintiff admits that no one at [defendant] ever made any derogatory remarks about her health.

Again, since the Middle District determined that plaintiff had failed to prove, under the ADA, that she was discriminated against based on her disability, we find that plaintiff's state law claim based on the same factual allegation of disability discrimination is collaterally estopped.

**[3]** We also find that collateral estoppel bars plaintiff's claim for negligent infliction of emotional distress. To establish a claim for negligent infliction of emotional distress, a plaintiff must prove that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). To prove that a defendant "negligently engaged in conduct," a plaintiff must show: (1) a legal duty; (2) a breach of that duty; and (3) that damages were proximately caused by such breach. *Tise v. Yates Construction Co.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997).

In this case, plaintiff claims that defendant breached its duty to plaintiff to not violate the public policy of North Carolina by discriminating against her on the basis of her age and disability. However, as stated above, the Middle District determined that defendant did not discriminate against plaintiff on either the basis of her age or disability. Assuming *arguendo* that defendant had a duty to plaintiff to not violate the public policy of North Carolina, the Middle District has already determined that a breach of such duty did not occur. Therefore, plaintiff's claim for negligent infliction of emotional distress is collaterally estopped.

**[4]** Plaintiff argues that defendant has waived its right to a collateral estoppel defense because defendant failed to oppose plaintiff's strategy of filing two different lawsuits. Plaintiff contends that defendant, by not objecting to the Middle District action on the grounds of prior pending action, waived a collateral estoppel defense. In support of her argument, plaintiff cites *Bockweg v. Anderson*, 333 N.C. 486, 428 S.E.2d 157 (1993) and *Howerton v. Grace Hospital*, 130 N.C. App. 327, 502 S.E.2d 659 (1998). We find *Bockweg* and *Howerton* inapplicable to this case. First, neither *Bockweg* nor *Howerton* involved the doctrine of collateral estoppel, or issue preclusion, but rather involved the doctrine of res judicata, or claim preclusion. *Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161; *Howerton*, 130 N.C. App. at 330, 502 S.E.2d at 661. Second, *Bockweg* and *Howerton* did not address whether a defendant waives the right to a collateral estoppel defense, but rather dealt with the issue of whether a party has consented to claim splitting. *Bockweg* held that "[f]ailure to timely object to the other action pending may be viewed as consent to the claim-splitting." 333 N.C. at 496, 428 S.E.2d at 164. Similarly, *Howerton* held that "when a party consents to the dismissal without prejudice of one or more (but not

all) of several claims, they tacitly consent to claim splitting." 130 N.C. App. at 331, 502 S.E.2d at 662. In this case, defendant does not challenge plaintiff's claim-splitting. Rather, defendant only argues that plaintiff's claims are barred by collateral estoppel and in fact raised this defense as soon as the defense became available to defendant. Nothing in *Bockweg* or *Howerton* suggests that by consenting to claim-splitting, a defendant waives the defense of collateral estoppel. We find that plaintiff's claims for discrimination are barred by collateral estoppel, and thereby serve the purpose of the doctrine: to "protect[] litigants from the burden of relitigating previously decided matters and promot[e] judicial economy by preventing needless litigation." *Bockweg*, 333 N.C. at 491, 428 S.E.2d at 161.

**[5]** Plaintiff also argues that her federal action was not a "prior action" but rather a "subsequent" or "simultaneous" action. We disagree. The magistrate judge's recommendation disposing of the federal action was filed on 15 December 2003, and the recommendation was adopted by the district court judge on 23 January 2004. The hearing on the state court motion for summary judgment did not occur until 9 February 2004. Therefore, at the time the state trial court heard defendant's motion for summary judgment and considered the issue of collateral estoppel, the Middle District case was complete and the issues common to both cases had already been decided. *See Houghton v. Harris*, 243 N.C. 92, 95, 89 S.E.2d 860, 863 (1955); *and Leary v. Land Bank*, 215 N.C. 501, 510, 2 S.E.2d 570, 575 (1939) (" 'A prior judgment upon the same cause of action sustains the plea of former recovery, although the judgment is in action commenced subsequently to the one in which it is pleaded. The date is of no consequence; it is the fact of an adjudication between the same parties upon the same subject matter, which gives effect to the former recovery.' " (citation omitted)).

Since our determination of the foregoing issues are dispositive of this case on appeal, we need not address plaintiff's remaining assignments of error. For those assignments of error not addressed in plaintiff's brief, we deem them abandoned. N.C. R. App. P. 28(b)(6).

Affirmed.

Judge GEER concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge dissenting.

The majority's opinion recites many of plaintiff's violations of our appellate rules, yet decides to reach the merits of plaintiff's appeal and affirms the trial court's grant of summary judgment in defendant's favor. Plaintiff egregiously failed to comply with multiple provisions of the North Carolina Rules of Appellate Procedure. This appeal should be dismissed. I respectfully dissent.

## I. Rules of Appellate Procedure

Plaintiff's appellate rules violations have impeded comprehension of the issues on appeal and frustrated the appellate process. This appeal is not properly before us and should be dismissed. *See Steingress v. Steingress*, 350 N.C. 64, 65-67, 511 S.E.2d 298, 299-300 (1999) ("when the appellant's brief does not comply with the rules by properly setting forth exceptions and assignments of error with reference to the transcript and authorities relied on under each assignment, it is difficult if not impossible to properly determine the appeal") (citing *State v. Newton*, 207 N.C. 323, 329, 177 S.E. 184, 187 (1934).

Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure states an appellant's brief shall contain:

> An argument, to contain the contentions of the appellant with respect to each question presented. Each question shall be separately stated. Immediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal. Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.

N.C. R. App. P. 28(b)(6) (2004). Plaintiff failed to comply with these rules.

N.C. R. App. P. 28(b)(5) (2004) also requires an appellant's brief contain "a non-argumentative summary of all material facts underlying the matter in controversy . . . supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be." The Rules further provide "relevant portions of statutes, rules, or regulations, the study of which is required to determine questions presented in the brief" must be reproduced as appendices to the brief. N.C. R. App. P. 28(d)(1)(c) (2004). N.C. R. App. P.

26(g)(1) (2004) mandates "[a]ll printed matter [in a brief] must appear in at least 12-point type . . . [t]he body of text shall be presented with double spacing between each line of text." Plaintiff violated or failed to comply with these provisions.

Rule 12 states the record on appeal must be filed within fifteen days after it has been settled. N.C. R. App. P. 12(a) (2004). Rule 28 requires an appellant's brief contain "[i]dentification of counsel by signature, typed name, office address and telephone number" and "[t]he proof of service required by Rule 26(d)." N.C. R. App. P. 28(b)(8)-(9) (2004). "Papers presented for filing shall contain . . . proof of service . . . certified by the person who made service." N.C. R. App. P. 26(d) (2004). "The body of the document shall at its close bear the . . . manuscript signature of counsel of record." N.C. R. App. P. 26(g)(3) (2004). Finally, each appellant must file an Appeal Information Statement at or before the time appellant's brief is due and must serve a copy of the statement upon all other parties to the appeal. N.C. R. App. P. 41(b)(2) (2004). Plaintiff also failed to comply with any of these provisions.

In order to reach the merits of plaintiff's argument and reverse the trial court's decision, this Court is limited to the issues properly presented for appeal. N.C. R. App. P. 10(a) (2004). Plaintiff's appeal and brief contains at least fourteen violations of the North Carolina Rules of Appellate Procedure.

As noted by the majority's opinion, plaintiff violated the Rules by: (1) failing to reference the record page numbers on which her assignments of error appear, *see* N.C. R. App. P. 28(b)(6); (2) referencing the incorrect assignment of error in support of argument D in her brief, *see id.*; (3) using argumentative language when summarizing the facts of the case, *see* N.C. R. App. P. 28(b)(5); (4) failing to reference pages of the transcript or record on appeal in connection with her factual assertions, *see id.*; (5) failing to include relevant portions of statutes in the appendix to her brief, *see* N.C. R. App. P. 28(d)(1)(c); (6) using the incorrect font size for footnotes in her brief, *see* N.C. R. App. P. 26(g); (7) providing improper citations for several of the authorities on which plaintiff's brief relies, *see* N.C. R. App. P. 28(b)(6); and (8) filing her Appeal Information Statement two weeks after the date her brief was due to be filed, *see* N.C. R. App. P. 41(b)(2).

Further review of the record and briefs reveals plaintiff also: (9) presented argument in footnotes, *see* N.C. R. App. P. 26(g)(1), *see also Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 147-48,

468 S.E.2d 269, 273 (1996); (10) served the record on appeal late (order entered 21 April 2004 extending time to serve record on appeal to 12 May 2004; record on appeal served 15 June 2004), *see* N.C. R. App. P. 12(a); (11) failed to sign her reply brief, *see* N.C. R. App. P. 28(b)(8) and N.C. R. App. P. 26(g)(3); (12) failed to sign the certificate of service in her reply brief, *see* N.C. R. App. P. 28(b)(9) and N.C. R. App. P. 26(d); (13) failed to sign the certificate of filing by first class mail in her reply brief, *see* N.C. R. App. P. 26(a)(1); and (14) failed to reference any assignment of error in support of Argument E in her brief, *see* N.C. R. App. P. 28(b)(6). Plaintiff's reply brief should be stricken. *See* N.C. R. App. P. 25(b) and N.C. R. App. P. 34(b)(3).

In *Shook v. County of Buncombe*, this Court dismissed the appellant's brief due to numerous violations of the Rules. 125 N.C. App. 284, 284, 480 S.E.2d 706, 706 (1997). The record on appeal in *Shook* consisted of three volumes containing 767 pages and numerous and complicated issues to be considered on appeal. *Id.* at 286, 480 S.E.2d at 707. We stated the violations in *Shook* "highlight[ed] why our appellate rules are a necessity." *Id.*

We further stated, "[w]hen we are presented with an appeal such as the instant one, the rules are not merely ritualistic formalisms, but are essential to our ability to ascertain the merits of an appeal." *Id.* We concluded by repeating that "[o]ur rules are mandatory, and in fairness to all who come before this Court, they must be enforced uniformly." *Id.* at 287, 480 S.E.2d at 708 (citation omitted).

Here, the record on appeal contains three volumes consisting of 609 pages and appellant's brief purports to present five questions for review. Appellant's numerous rules violations have made it "difficult if not impossible to properly determine the appeal." *Steingress*, 350 N.C. at 66, 511 S.E.2d at 299 (citation omitted). Because "[o]ur rules are mandatory, and in fairness to all who come before this Court, they must be enforced uniformly[,] . . . [plaintiff's] appeal [should be] dismissed." *Shook*, 125 N.C. App. at 287, 480 S.E.2d at 708 (internal citation omitted).

## II. Rule 2

The majority's opinion recognizes plaintiff egregiously failed to comply with the appellate rules, yet decides to review the merits of plaintiff's claims by invoking Rule 2 of the North Carolina Rules of Appellate Procedure.

Rule 2 states:

[t]o prevent manifest injustice to a party, or to expedite deci-
sion in the public interest, either court of the appellate division
may, *except as otherwise expressly provided by these rules*, sus-
pend or vary the requirements or provisions of any of these
rules in a case pending before it upon application of a party or
upon its own initiative, and may order proceedings in accord-
ance with its directions.

N.C. R. App. P. 2 (2004) (emphasis supplied).

"Our Supreme Court stated in *Steingress v. Steingress* that
'Rule 2 relates to the residual power of our appellate courts to
consider, *in exceptional circumstances*, significant issues of impor-
tance in the public interest, or to prevent injustice which appears
manifest to the Court and *only in such instances*.'" *Wolfe v. Villines*,
171 N.C. App. 483, 492, 610 S.E.2d 754, 761 (2005) (J. Tyson dissent-
ing) (citing *Steingress*, 350 N.C. at 66, 511 S.E.2d at 299-300 (citing
*Blumenthal v. Lynch*, 315 N.C. 571, 578, 340 S.E.2d 358, 362 (1986)).
"This Court has repeatedly held that 'there is no basis under
Appellate Rule 2 upon which we should waive plaintiff's violations of
Appellate Rules . . . .'" *Wolfe*, 171 N.C. App. at 492, 610 S.E.2d at 761
(quoting *Holland v. Heavner*, 164 N.C. App. 218, 222, 595 S.E.2d 224,
227 (2004) (quoting *Sessoms v. Sessoms*, 76 N.C. App. 338, 340, 332
S.E.2d 511, 513 (1985))).

Further, our Supreme Court recently held in *Viar v. N.C. Dep't of
Transp.*, "[i]t is not the role of the appellate courts . . . to create an
appeal for an appellant. [T]he rules of Appellate Procedure must be
consistently applied; otherwise, the Rules become meaningless, and
an appellee is left without notice of the basis upon which an appellate
court might rule." 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (*per
curiam*) ("[t]he majority opinion in the Court of Appeals, recognizing
the flawed content of plaintiff's appeal, applied Rule 2 of the Rules of
Appellate Procedure to suspend the Rules").

### III.  Conclusion

Our Rules are mandatory and in fairness to all parties must be
uniformly enforced. Plaintiff's appeal should be dismissed. *See Shook*,
125 N.C. App. at 287, 480 S.E.2d at 708. "My review of the entire
record fails to disclose any 'exceptional circumstances,' 'significant
issues,' or 'manifest injustice' to warrant suspension of the Appellate
Rules." *Wolfe*, 171 N.C. App. at 493, 610 S.E.2d at 761. Without a show-

ing of "exceptional circumstances," "significant issues," or "manifest injustice," our precedents do not allow invoking Rule 2 to excuse appellant's rule violations and reach the merits of this appeal. *Id.* I vote to dismiss plaintiff's appeal and respectfully dissent.