An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-688

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

THURMAN M. JUDGE, JR.,
        Plaintiff,

v.                                      North Carolina
                                        Industrial Commission
                                        I.C. No. TA-21612
N.C. DEPARTMENT OF PUBLIC SAFETY,
formerly N.C. DEPARTMENT OF
CORRECTION,
        Defendant.


Appeal by Plaintiff from order entered 26 March 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 November 2013.


*Thurman M. Judge, Jr., pro se.*

*Attorney General Roy Cooper, by Associate Attorney General Adrian W. Dellinger, for Defendant.*


STEPHENS, Judge.


*Factual and Procedural Background*

This case arises out of an act of violence that occurred on 14 November 2009. At that time, Plaintiff Thurman M. Judge, Jr., was an inmate in the custody of the North Carolina Department of Public Safety ("Defendant") at Tabor Correctional Institution

("the Prison"), where he worked as a barber. According to Plaintiff, the attack occurred while he was working as a barber. A high-security inmate was having his hair cut by another barber when the inmate stood up from his chair and punched Plaintiff in the face. Plaintiff alleges that security personnel were not present at the time and that the high-security inmate was not properly restrained.

On 12 February 2010, Plaintiff initiated a civil action against Defendant under the North Carolina State Tort Claims Act, asserting that Defendant negligently allowed this attack to occur. On 9 March 2010, Defendant filed a motion to dismiss the action because "Plaintiff's [a]ffidavit discloses facts which necessarily defeat the asserted tort claim, insofar as his exclusive remedy, if any, would be under the Workers' Compensation Act." A deputy commissioner with the North Carolina Industrial Commission denied that motion on 25 June 2010 and set the matter for hearing. On 9 December 2011, Defendant moved for summary judgment, again asserting that Plaintiff's tort claim was necessarily defeated because "his exclusive remedy would be under the Workers' Compensation Act." Plaintiff's case was heard before a deputy commissioner on 17 April 2012, and the deputy commissioner granted Defendant's motion for summary judgment.

Plaintiff appealed that decision to the full North Carolina Industrial Commission ("the Commission"), which dismissed his tort claim. In doing so, the Commission provided the following rationale:

> Plaintiff alleges that he was injured in the course and scope of his employment as a barber while incarcerated by Defendant. Plaintiff's exclusive remedy lies under the Workers' Compensation Act[,] not the Tort Claims Act, and Plaintiff's present tort claim must be dismissed.

Plaintiff appeals the Commission's decision.

*Discussion*

On appeal, Plaintiff contends that the Commission erred in dismissing his claim, arguing that he was not acting in the scope of his employment at the time of the attack and that the Commission's failure to address the merits of his claim was a violation of his due process rights. In conclusion, Plaintiff asserts:

> The purpose of [the] Worker's [sic] Compensation Act is remedy for prisoners injured for their loss of earning capacity by accidental circumstances; however, a suit in "tort" is remedy for neglegence [sic] / misconduct of state employees which gives rise to injury due to dangerous working conditions as is the central issue in the case at bar.

Consequently, Plaintiff contends that the members of the prison staff violated their legal duty and requests that we overturn the Commission's order and remand for further proceedings as a result. We cannot grant that request.

"The Tort Claims Act was enacted in order to enlarge the rights and remedies of a person who is injured by the negligence of a State employee who was acting within the course of his employment." *Simmons v. N.C. Dep't of Transp.*, 128 N.C. App. 402, 405, 496 S.E.2d 790, 792-93 (1998). Separate and distinct from that enactment, the Workers' Compensation Act ("the Act") provides "compensation for an employee in this [S]tate who has suffered an injury by accident[1] which arose out of and in the course of his employment . . . without regard to whether the accident . . . was caused by the negligence of the employer." *Lee v. Am. Enka Corp.*, 212 N.C. 455, 461-62, 193 S.E. 809, 813 (1937). The Act explicitly provides that the rights and remedies granted therein *exclude* those that an employee might otherwise have at common law. N.C. Gen. Stat. § 97-10.1 (2011).

---

[1] "An accident is an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." *Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999) (citation and internal quotation marks omitted), *disc. review denied*, 351 N.C. 351, 543 S.E.2d 124 (2000).

Discussing the rationale behind the Act, our Supreme Court has stated that it "provides for an injured employee's certain and sure recovery without having to prove employer negligence or face [certain] affirmative defenses . . . ." *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991). As a consequence, the Act severely limits "the employee's right to pursue potentially larger damages awards in civil actions." *Id.* In addition to traditional employees, the Act applies to working prisoners who suffer "accidental injury . . . arising out of and in the course of [their assigned] employment . . . ." N.C. Gen. Stat. § 97-13(c) ("The [exclusivity provision] shall apply to prisoners and discharged persons entitled to compensation under this subsection and to the State in the same manner as said section applies to employees and employers.").

Here, Plaintiff's claim occurred while he was working as a barber for the Prison. In his tort claim affidavit, Plaintiff described the incident as follows:

> Me and [another inmate] was cutting hair on Gray Unit Lock-Up . . . we was both cutting, when [two security personnel] came [to] escort [my client] back [to his cell]. [I was] alone with the other barber and his client[, the high-security inmate.] A couple of seconds later I see the [high-security inmate] stand up, come out of his hand . . . which was behind his back and attack me without notice. During the attack I was

> punched in the mouth [and] face by the inmate that was supposed to be cuffed and escorted by two officers.

On appeal, Plaintiff argues that the accident and his injury did not arise out of and in the course of his employment and, thus, that the Act does not apply. For support, Plaintiff notes that he was not engaged in cutting hair at the moment of the attack and points out that another barber was cutting the hair of the high-security inmate on that day. These facts do not save Plaintiff's claim.

As we have previously noted,

> [a]n injury arises out of . . . employment when it comes from the work the employee is to do, or out of the service he is to perform, or as a natural result of one of the risks of the employment; the injury must spring from the employment or have its origin therein. For an accident to arise out of the employment there must be some causal connection between the injury and the employment.

*Harless v. Flynn*, 1 N.C. App. 448, 455, 162 S.E.2d 47, 52 (1968). The attack on Plaintiff occurred while he was serving as a barber for the prison. The fact that it was not perpetrated at the moment Plaintiff was involved in cutting someone's hair or by Plaintiff's particular client is irrelevant because it was causally connected to Plaintiff's employment. Accordingly, Plaintiff's first argument is overruled.

Plaintiff also argues that the Commission violated his due process rights because it failed to reach the underlying merits of his claim. For support, Plaintiff contends that Defendant violated the doctrine of collateral estoppel by making the same argument in its motions to dismiss and for summary judgment. This is a misinterpretation of the doctrine.

Collateral estoppel[2] was developed to prevent repetitious lawsuits on questions that have already been decided and remain "substantially static, factually and legally." *State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000). Thus, the doctrine prevents the re-litigation of identical issues in a new, separate case, when (1) the issue was actually litigated and determined, (2) the issue was necessary to the outcome in the original case, and (3) there was a final judgment on the merits. *Id.; see also Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 193, 614 S.E.2d 396, 401 (2005) ("Collateral estoppel will apply when: (1) a prior suit resulted in a final judgment on the merits; (2) identical issues were involved; (3) the issue was actually litigated in the prior suit and necessary to the

_____

[2] Collateral estoppel is also referred to as "issue preclusion" or "estoppel by judgment." *See, e.g., King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 805 (1973); *Williams v. Peabody*, __ N.C. App. __, __, 719 S.E.2d 88, 93 (2011).

judgment; and (4) the issue was actually determined.") (citations, internal quotation marks, and brackets omitted). The United States Supreme Court has described a final judgment as one that "terminates the litigation between the parties on the merits of the case[] and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis, I.M. & S. Ry. Co. v. S. Express Co.*, 108 U.S. 24, 28-29, 27 L. Ed. 638, 639 (1883).

The denial of Defendant's motion to dismiss did not constitute a final judgment on the merits because the suit was not disposed of and could continue to proceed below. *See, e.g.*, *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (noting that the denial of the defendant's motion to dismiss was "made during the pendency of the action [and did] not dispose of the case, but instead [left] it for further action by the trial court in order to settle and determine the entire controversy") (citations and internal quotation marks omitted). Collateral estoppel can only preclude the re-litigation of an issue in a *subsequent case*, after that same issue was *finally resolved* in a prior suit. Here, the issue of the applicability of the Tort Claims Act was still pending when Defendant moved for summary judgment. Therefore, the fact

that the issue was raised again in the same case did not — and could not — implicate the doctrine of collateral estoppel. Accordingly, Plaintiff's second argument is overruled, and we affirm the Commission's 26 May 2013 order dismissing his tort claim with prejudice.[3]

AFFIRMED.

Judges GEER and ERVIN concur.

Report per Rule 30(e).

---

[3] As the Commission noted in its order, however, Plaintiff may file a workers' compensation claim within twelve months of his discharge from Defendant's custody.