NO. COA13-972

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

IN THE MATTER OF:

K.A.                                    Mecklenburg County
E.A.                                    Nos. 12 JA 704-06
K.A.


Appeal by Respondent-Mother from orders entered 19 April 2013 and 14 June 2013 by Judge Elizabeth T. Trosch in Mecklenburg County District Court. Heard in the Court of Appeals 27 February 2014.

> *Senior Associate Attorney Twyla Hollingsworth-Richardson for Mecklenburg County Department of Social Services, Youth & Family Services.*
>
> *Mercedes O. Chut for Respondent-Mother.*
>
> *Parker Poe Adams & Bernstein LLP, by Deborah L. Edney, for Guardian ad Litem.*

STEPHENS, Judge.

*Factual Background and Procedural History*

This case arises from an adjudication of neglect and dependency in Mecklenburg County District Court. Three minor children, referred to as "Katie," "Elliot," and "Karen" in this

opinion,[1] were the subject of the hearing. Their parents, Respondent-Mother and "the father," were married on or about 30 July 1994 and separated on or about 11 December 2010. Prior to separation, Respondent-Mother "became determined to prove [that the father] had molested all three minor children."

On 20 December 2010, Respondent-Mother initiated a custody action and filed a motion for a domestic violence protective order. The parties reached a consent order in the domestic violence matter in February of 2011. On 19 September 2012, the Mecklenburg County District Court, Judge Christy T. Mann presiding, entered a permanent civil custody order. The court found that "[i]t [was] highly unlikely that [Karen] ha[d] been molested or abused by [the father]" and that Respondent-Mother had "perpetuated a false set of beliefs onto the children which they now believe." The court placed the juveniles in the father's legal custody, but ordered the children and the father to "undergo intensive counseling with therapists to prepare them for the transition from [Respondent-Mother's] home to [the father's] home," given the "significant psychological damage" suffered by the children as a result of the parties' divorce and the Respondent-Mother's attempts to alienate the children from

---

[1] Pseudonyms are used to protect the juveniles' identities.

the father. On 6 November 2012, the court entered a second custody order placing Katie and Elliot in the father's physical custody and ordering therapy to allow Karen to be placed with the father. The order also provided that Respondent-Mother could only visit with Katie and Elliot under supervision. The record indicates that neither party appealed the custody orders.

Seven days later, on 13 November 2012, Petitioner Mecklenburg County Department of Social Services, Youth & Family Services ("YFS"), filed a juvenile petition alleging that all three juveniles were abused, neglected, and dependent. The petition recited certain findings from the trial court's 19 September 2012 civil custody order and alleged that, "[d]uring one of the . . . therapy sessions, [which were ordered so that Karen could be returned to her father's care, Karen] attacked [the] father and had to be pulled off of him by a therapist." The petition also alleged that Elliot had accused the father of sexual abuse, but noted that the accusation was "suspect."

On 20 November 2012, the trial court entered a nonsecure custody order placing Karen in foster care. The court also determined that Katie and Elliot would remain with the father, noting that "YFS ha[d] taken appropriate steps to assess the safety of the two children remaining in the father's care [and]

enter[ed] into a safety plan with the father to ensure the children's continued safety." In addition, the trial court found there was a reasonable factual basis to believe the allegations in the petition and that placement in foster care was the most appropriate arrangement as to Karen. Lastly, the court noted that "[Respondent-Mother] is collaterally estopped from re-litigating the issues adjudicated by Judge Mann. YFS shall begin the [Interstate Compact on the Placement of Children] process for the maternal grandparents[,] but the [c]ourt will not consider temporary custody with them."

The petition came on for hearing on 14 January 2013. At the outset of the hearing, the trial court orally re-stated its determination that Respondent-Mother "would be collaterally estopped from re-litigating those issues that were litigated by those parties as Petitioner and [Respondent-Mother] in a child custody action before the Honorable Christy T. Mann in 10 CVD 25443." The court also received documents from the civil custody case into evidence. The father stipulated to a mediated petition agreement, but YFS offered no further evidence at adjudication. Respondent-Mother called several witnesses, including the father. During the presentation of evidence, the trial court sustained a number of objections to Respondent-Mother's

questions about the father's alleged abuse of the juveniles on grounds that Respondent-Mother was collaterally estopped from re-litigating that issue.

The trial court entered an adjudication and disposition order on 11 March 2013 and an amended adjudication order on 19 April 2013.[2] In the amended order, the trial court found as fact that "[t]he [c]ourt has previously ruled that the parents are collaterally [e]stopped from re-litigating issues which have already been ruled upon in the custody case. The [c]ourt takes judicial notice of the findings made by Judge Mann and those findings are incorporated herein." Given the findings of fact in its order, the trial court adjudicated all three juveniles neglected and additionally adjudicated Karen dependent. The trial court entered a dispositional order on 14 June 2013, providing that Karen would remain in the legal custody of YFS and continue treatment "in order to change her false beliefs

---

[2] In the 11 March 2013 order, the court elected to continue disposition in order to "fully assess the most appropriate way to achieve the purpose of the [c]ourt's exercising jurisdiction over the children [by obtaining] more information about the needs of the children." Oddly, the 11 March 2013 adjudication and disposition order purports to continue the disposition hearing to 6 March 2013, an obvious impossibility that was repeated in the 19 April 2013 amended order. In any event, the 14 June 2013 disposition order makes clear that the hearing occurred on 16 May 2013.

about her father so she can be reintegrated into his home."
Respondent-Mother appeals.

*Discussion*

Respondent-Mother appeals from the trial court's adjudication and disposition orders on grounds that the trial court (1) erroneously found that Respondent-Mother was collaterally estopped and/or barred by the doctrine of *res judicata*[3] from litigating the allegations in the petition that were addressed in the 19 September 2012 civil custody order or, in the alternative, (2) failed to make sufficient findings of fact to support its adjudication order. We reverse the adjudication and disposition orders on grounds that the trial court erred by invoking the doctrine of collateral estoppel and remand for further proceedings consistent with this opinion.

*I. Appellate Review*

As a preliminary matter, we address YFS's argument that Respondent-Mother failed to preserve her first argument for appellate review because she did not object when the trial court

---

[3] The record indicates that, despite Respondent-Mother's argument, the trial court relied exclusively on the doctrine of collateral estoppel to bar litigation on the relevant allegations in the petition, not *res judicata*. Therefore, we tailor our analysis to her collateral estoppel argument.

stated at the beginning of the hearing that collateral estoppel would work to bar re-litigation of those issues raised and determined in the custody case. For support, YFS points out that, during a discussion of *res judicata* and collateral estoppel, counsel for Respondent-Mother "state[d] that she [was] not re-litigating any of the issues decided by Judge Mann" and even stated in her closing argument that she "obviously accepted" the collateral estoppel ruling. These statements are taken out of context and do not accurately represent what occurred at the hearing.

Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure provides that

> [i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion. . . .

N.C.R. App. P. 10(a)(1).

Relevant to the preservation issue, the following colloquy occurred between counsel for Respondent-Mother, the father, counsel for the father, and the court during the 14 January 2013 hearing:

[COUNSEL FOR RESPONDENT-MOTHER:] These allegations, when did they first surface?

[THE FATHER:] Which allegations are you referring to?

[COUNSEL FOR RESPONDENT-MOTHER:] Sexual abuse.

[THE FATHER:] Approximately December of 2010.

[COUNSEL FOR RESPONDENT-MOTHER:] And what — when it surfaced, what did you offer to do?

[COUNSEL FOR THE FATHER]: I'm gonna object. I don't know how far we're gonna go with this. My understanding is the only allegation that would be relevant here is the one that's in the petition . . . . Everything else would have been covered by the previous orders of Judge Christy Mann and should be collaterally estopped . . . .

THE COURT: All right. So you're objecting to this evidence on the basis that [Respondent-Mother] would be collaterally estopped from re-litigating it?

[COUNSEL FOR THE FATHER]: Collaterally estopped or *res judicata* or beyond the scope.

THE COURT: All right. The objection is sustained.

[COUNSEL FOR RESPONDENT-MOTHER]: May I be heard?

THE COURT: Yes. What is your argument for the admissibility of this evidence?

[COUNSEL FOR RESPONDENT-MOTHER]: Well, the issue I'm trying to ask him about actually

was not provided in any of the orders. I asked him what he did. There's nothing about what he did.

And my position is collateral estoppel does not apply or *res judicata* in these proceedings. For *res judicata* or collateral estoppel to apply, the [c]ourt has to find that the parties are identical, the issues are identical, and we don't have that here. You had a — you had a civil action between [the father] and [Respondent-Mother] in civil court.

In this court, you have — and that was with [Respondent-Mother] as the plaintiff and [the father] as the defendant. We are in juvenile court. A different statute applies, which is the 7B statute. You have different parties now. You don't have [Respondent-Mother] bringing an action against [the father].

You have [YFS] as the petitioner in this case. You have the *Guardian ad Litem*'s office . . . representing the children. You have the mother and the father . . . as respondents in this action. So I say there is no identity of parties. The issues are not the same.

I'm not re-litigating anything, and there are additional allegations in the petition that are not referenced here. . . .

I met with [counsel for YFS] on Friday when I was getting my discovery, and I said, I don't have any police reports, I don't have any of this. [He s]aid, well, I'm not going to be offering any of those. And now we have a stipulation dealing with police reports. And if the [c]ourt adopts that stance, [Respondent-Mother] cannot litigate anything.

I say there's no identity of parties and there's no *res judicata* as far as what I'm questioning. There's some things that I'm not going to be re-litigating, but I asked him specifically when the allegations surfaced what did you do. He took certain steps that I know weren't reflected in any of the orders, and I think I should be allowed to ask that.

And I clearly wasn't a party to that proceeding. My client was unrepresented in the civil proceeding.

THE COURT: All right. Well, the Honorable Christy T. Mann presided over a hearing July 10th through 11th, 2012. . . .

. . .

And so I'm going to conclude that [Respondent-Mother] should not be allowed to re-litigate those factual allegations in this proceeding . . . . So the objection is sustained.

(Italics added). Later, in her closing argument, counsel for

Respondent-Mother made the following comment:

[COUNSEL FOR RESPONDENT MOTHER]: . . .

While I feel that the Court has ruled that we can't litigate anything because of collateral estoppel and *res judicata*, which obviously we have accepted, I feel my hands are tied. I'm not really properly able to argue but . . . that the petition be dismissed. . . .

(Italics added). This is clearly sufficient to preserve review

of the collateral estoppel issue under Rule 10.

When counsel for the father sought to halt questioning on the issue of the alleged abuse, counsel for Respondent-Mother made a clear, cogent argument for why she objected to the trial court's application of the collateral estoppel rule. Afterward, the court specifically ruled against her. As the hearing continued, counsel for Respondent-Mother maintained that she did not believe her line of questioning was barred by the doctrines of *res judicata* or collateral estoppel. Indeed, a reading of counsel's closing argument in context makes it clear that she "accepted" the trial court's ruling only to the extent that she had to do so in order to try the case, not because she believed the ruling was correct. For these reasons, we hold that this issue was properly preserved for appellate review under Rule 10. Therefore, YFS's preservation argument is overruled.

*II. Collateral Estoppel*

In her first argument on appeal, Respondent-Mother contends the trial court prejudicially erred by finding in the 19 April 2013 neglect order that she was collaterally estopped from re-litigating the issues addressed in the 19 September 2012 civil custody order because the neglect hearing and the custody hearing involved different parties and different burdens of proof. In response, YFS asserts that (1) mutuality of parties is

no longer a requirement for collateral estoppel, (2) North Carolina law allows the application of the collateral estoppel doctrine despite the different burdens of proof in juvenile cases under Chapters 7B and 50, and (3) any error that the trial court made in applying the doctrine of collateral estoppel is harmless. The Guardian *ad Litem* contends that, even though mutuality is no longer a requirement for collateral estoppel, the trial court erred in applying the doctrine because of the different burdens of proof between this case and the civil custody case. Nonetheless, the Guardian *ad Litem* asserts that the trial court's error is harmless. After a thorough review of the case, we conclude that the trial court prejudicially erred in applying the doctrine of collateral estoppel. Accordingly, we reverse the order of the trial court and remand for further proceedings.

Under the traditional definition of collateral estoppel, our Supreme Court has said in *Thomas M. McInnis & Assocs., Inc. v. Hall* that "a final judgment on the merits prevents re[-]litigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." 318 N.C. 421, 429, 349 S.E.2d 552, 557 (1986) ("Traditionally,

courts limited the application of both [*res judicata* and collateral estoppel] to parties or those in privity with them by requiring so-called 'mutuality of estoppel:' both parties had to be bound by the prior judgment.") (citation omitted). After explaining the traditional definition of collateral estoppel, however, the Supreme Court went on to decide that there was "no good reason for continuing to require mutuality of estoppel" and abolished the requirement as a defensive tactic. *Id.* at 434, 349 S.E.2d at 560. Relying on that decision, this Court has since stated that "mutuality of parties is no longer required when invoking either offensive or defensive collateral estoppel," intending to abolish the element altogether. *Rymer v. Estate of Sorrells*, 127 N.C. App. 266, 269, 488 S.E.2d 838, 840 (1997). These are the cases relied on by the Guardian *ad Litem* and YFS to support their assertion that mutuality is no longer an element of collateral estoppel.

Inexplicably, however, our Supreme Court has since defined the doctrine of collateral estoppel using the traditional definition, providing a lengthy analysis of the mutuality element. *See State v. Summers*, 351 N.C. 620, 626, 528 S.E.2d 17, 22 (2000) (holding that "the elements of collateral estoppel were satisfied" when, *inter alia*, "the district attorney is in

privity with the Attorney General"). Though the *Summers* court cites *Hall*, it does not discuss the apparent divergence from *Hall* and *Rymer* on the issue of mutuality. *See id.* at 622, 528 S.E.2d at 20. The result is that our courts have defined collateral estoppel variously, applying the privity element in some cases and refraining to do so in others. *See, e.g.*, *Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 192-93, 614 S.E.2d 396, 401 (2005) (defining collateral estoppel without the privity element); *Bee Tree Missionary Baptist Church v. McNeil*, 153 N.C. App. 797, 799, 570 S.E.2d 781, 783 (2002) ("For collateral estoppel to bar [the] plaintiff's action, [the] defendants must show . . . (4) both parties are either identical to or in privity with a party or the parties from the prior suit.") (citations omitted); *In re Foreclosure of Azalea Garden Bd. & Care, Inc.*, 140 N.C. App. 45, 54, 535 S.E.2d 388, 395 (2000) ("[M]utuality of parties is no longer required when invoking either offensive or defensive collateral estoppel . . . .").

We need not resolve the mutuality issue here. Even if privity is not a requirement of collateral estoppel, the trial court erroneously applied the doctrine because of the different burdens of proof used in custody and neglect hearings. As Respondent-Mother points out and the Guardian *ad Litem* concedes,

"case law is well[ ]settled that collateral estoppel cannot apply where the proceedings involve a different burden of proof." *See, e.g.*, *State v. Safrit*, 154 N.C. App. 727, 729, 572 S.E.2d 863, 865 (2002) ("It is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel.") (citations and internal quotation marks omitted), *disc. review denied*, 357 N.C. 65, 579 S.E.2d 571 (2003). YFS's unsupported assertion that "civil actions intertwined around the best interest[s] of the juveniles" are somehow exempt from this precept is without merit.

Here, the burden of proof in the custody action was preponderance of the evidence. N.C. Gen. Stat. § 50-13.5(a) (2013) ("The procedure in actions for custody and support of minor children shall be as in civil actions . . . ."); *McCorkle v. Beatty*, 225 N.C. 178, 181, 33 S.E.2d 753, 755 (1945) ("Ordinarily, in civil matters, the burden of the issue is required to be carried only by the preponderance or greater weight of the evidence . . . .") (citations omitted). The standard of proof for an adjudicatory order entered on a petition alleging abuse, neglect, or dependency in a juvenile matter, however, is "clear and convincing evidence." N.C. Gen.

Stat. § 7B-805 (2013); *In re C.B.*, 180 N.C. App. 221, 222, 636 S.E.2d 336, 337 (2006) (citation omitted), *affirmed per curiam*, 361 N.C. 345, 643 S.E.2d 587 (2007). Therefore, we hold that the trial court erred by applying the doctrine of collateral estoppel in this case to bar Respondent-Mother's questions because the neglect hearing was held pursuant to a different burden of proof. *See Safrit*, 154 N.C. App. at 729, 572 S.E.2d at 865.

Nevertheless, the Guardian *ad Litem* and YFS contend that such error was harmless. In support of this point, the Guardian *ad Litem* notes that "the trial court . . . properly found Karen to be neglected and dependent and the issue as to the neglect of Elliot and Katie is now moot." In addition, YFS points out that the trial court received "other items" into evidence beyond the testimony that was barred on grounds of collateral estoppel. Specifically, YFS points out that the court properly considered the father's mediated agreement, the father's testimony, testimony of the YFS social worker, and the Respondent-Mother's own evidence in determining that Katie and Elliot were neglected and that Karen was both neglected and dependent. We are unpersuaded.

When the appellant in a civil case is seeking a new trial pursuant to prejudicial error, as here, the appealing party must "enable the Court to see that [s]he was prejudiced and that a different result would have likely ensued had the error not occurred." *Hasty v. Turner*, 53 N.C. App. 746, 750, 281 S.E.2d 728, 730 (1981). Respondent-Mother argues on appeal that she was prejudiced by the trial court's erroneous application of the collateral estoppel rule in this case because

> the trial court sustained objections to questions asked by [Respondent-Mother] . . . to the point that the court limited the evidence to those orders in the [c]ustody [a]ction. The court did not allow any questioning of the allegations in the petition to the extent that they mirrored or related to the findings of fact made in orders in the [c]ustody [a]ction.

This comports with our reading of the transcript. The trial court's erroneous application of the collateral estoppel rule made it impossible for Respondent-Mother to effectively contest the allegations made in the petition under the higher, clear and convincing evidence standard.[4] For this reason, we cannot

---

[4] The Guardian *ad litem* asserts that the trial court's order was nonetheless correct because it is permissible to take judicial notice of findings of fact made in a previous order, which was decided under a different, lower standard of review, citing *In re J.B.*, 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005) [hereinafter *J.B.*]. This is incorrect. In *J.B.* we held that a trial court may take judicial notice of "prior disposition

conclude that, if Respondent-Mother had been given the opportunity to contest *all* of the allegations made in the petition, a different result might not have ensued. Therefore, we reverse the trial court's order and remand for further proceedings consistent with this opinion.[5]

REVERSED and REMANDED.

Judges CALABRIA and ELMORE concur.

---

orders" even though such orders were based on a lower evidentiary standard. *Id.* Taking judicial notice of the existence of an order or the disposition in that order is not the same thing as taking judicial notice of each of the facts resolved in that order. Here, the court did the latter.

[5] Because we resolve this case on collateral estoppel grounds, we need not address Respondent-Mother's second, alternative argument.