IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-168

Filed 3 September 2024

Carteret County, No. 22 JA 52

In the Matter of: A.D.H.

Appeal by Petitioner from order entered 19 September 2022 by Judge W. David McFadyen III in Carteret County District Court. Heard in the Court of Appeals 22 January 2024.

*Bill Ward & Kirby Smith, P.A., by Kirby H. Smith, III, for petitioner-appellant Carteret County Department of Social Services.*

*Matthew D. Wunsche for guardian ad litem.*

*Schulz Stephenson Law, by Sundee G. Stephenson and Bradley N. Schulz, for respondent-appellee father.*

*No brief for respondent-appellee mother.*

MURPHY, Judge.

Petitioner-appellee Carteret County Department of Social Services ("Petitioner") appeals from an order granting various motions filed by respondent-father ("Father") and dismissing the juvenile petition. For the reasons below, we vacate the trial court's order and remand for further proceedings.

## BACKGROUND

**A. Prior Proceedings**

A.D.H. ("Alice")[1] was born to Father and respondent-mother ("Mother") in 2013. In February 2021, Mother filed a complaint in Carteret County District Court seeking custody of Alice. On or about 9 March 2021, the trial court entered a temporary custody order granting Mother and Father joint legal custody of Alice, with Mother having primary physical custody and Father having visitation. Father's visitation included overnight visits and a "two weeks on/two weeks off" schedule during Alice's summer vacation.

In March 2021, Alice began making statements to schoolmates and her school guidance counselor that Father had sexually abused her. These reports were ultimately relayed to Petitioner then forwarded to the Craven County Department of Social Services ("Craven County DSS") due to a purported conflict. Craven County DSS opened an investigation into the alleged abuse and arranged a trauma screen with the Child Advocacy Center ("CAC"), a Child Medical Evaluation ("CME"), and a Child and Family Evaluation ("CFE") for Alice. By November 2021, the Ashe County Sheriff's Office had also opened an investigation into Father's conduct.

On 5 April 2022, the trial court entered a permanent child custody order ("CCO") in the custody dispute finding any allegations of abuse were unfounded. It found that "after two (2) investigations by the Ashe County Sheriff's [Office] it was determined that there was not sufficient evidence to charge [Father] with any

---

[1] We use a pseudonym to protect the juvenile's identity and for ease of reading.

wrongdoing." Additionally, Alice had made no disclosures about sexual abuse during the CAC trauma screen, CME, or CFE arranged by Craven County DSS. Furthermore, "[a]ll professionals involved in [the custody] matter[,]" including Craven County social workers, Ashe County detectives, and the CFE evaluator, "had concerns that [Mother] was coaching the minor child and feeding into a false narrative with regards to" the allegations against Father. The trial court found there had been additional reports of abuse since March 2021, but none of the reports had been substantiated. Instead, Mother appeared to be creating a false narrative around Father's alleged abuse of Alice in an attempt to obtain full custody of Alice by (1) taking Alice to a substance abuse counselor who "was not qualified to counsel the minor child as she was not even a licensed clinical mental health counselor, had a lack of training to interview the child, and was quite possibly indorsing a false narrative when counseling the child"; (2) "misrepresent[ing] the findings of DSS to various professionals"; and (3) giving untruthful testimony at the custody hearing. The trial court ultimately found "[F]ather did not abuse the minor child in any way. The Court does find as fact that the Defendant father did not engage in inappropriate parenting or activities with the minor child." The trial court ordered, *inter alia*, that Father be granted primary legal and physical custody of Alice and prohibited anyone except Alice's current, qualified therapist from discussing any past allegations with Alice.

On 17 June 2022, Craven County DSS filed an "Interference Petition Pursuant

to [N.C.G.S.] § 7B-303" alleging Father was obstructing or interfering with its investigation. The interference petition alleged that, on 28 March 2022, there was another report that Father abused Alice. This report was made to Petitioner and referred to Craven County DSS. The interference petition alleged Alice was recommended another CME, but Father was refusing to allow Alice to participate in the examination. Craven County DSS moved for the trial court to order that Father cease obstructing its investigation and that Craven County DSS be allowed to conduct home studies, interviews, and medical examinations as necessary for its investigation.

On or about 15 July 2022, *nunc pro tunc* 17 June 2022, the trial court entered an order dismissing the interference petition ("IPO"). The trial court found counsel for Craven County DSS "stated to the Court that DSS could complete its[] investigation without requiring a medical evaluation of the child and without requiring further home visits at the Respondent father's residence[,] [but] [t]hey did, however, need a child and family evaluation" completed by someone other the initial evaluator. The court concluded "[g]ood cause exists to grant Respondent father's Motion to Dismiss, with prejudice[,]" and dismissed the interference petition, broadly reiterating much of what had already been said in the CCO.

**B. Current Proceeding**

On 29 August 2022, Petitioner filed a juvenile petition alleging Alice was an abused, neglected, and dependent juvenile. The juvenile petition acknowledged the

- 4 -

ongoing civil custody dispute and interference proceeding but did not discuss any of the prior orders in detail or delineate which allegations were found noncredible. The allegations in the juvenile petition recited at length verbatim statements made by Alice to various reporters that she was repeatedly sexually abused by Father. These specific statements are not necessary to resolution of this appeal and are not discussed in detail.

The petition alleged Alice made statements before entry of the CCO and IPO in March 2021, May 2021, September 2021, October 2021, and March 2022, as well as statements after entry of the CCO and IPO. Most recently, Petitioner received a report in July 2022 that, while at a sleepover with a friend, Alice disclosed sexual abuse by Father. Thereafter, one of Petitioner's social workers, Kelly Dorman, interviewed Alice at her school on 29 August 2022. Alice made additional disclosures of abuse at this interview. However, the timeline of alleged abuse was not clear from Alice's statements. Alice stated that the abuse could have occurred as far back as two years in the past or may have still been ongoing. The juvenile petition ultimately alleged Alice was abused and neglected due to sexual abuse by Father and dependent because neither Father nor Mother were able to provide for Alice's care or supervision or had appropriate alternative childcare arrangements.

On 29 August 2022, the trial court entered an order granting Petitioner nonsecure custody of Alice.

On 31 August 2022, Father filed various motions to dismiss, motions *in limine*,

motions to sanction DSS officials or hold the officials in contempt, and a response to the juvenile petition. The two relevant motions to dismiss asserted the juvenile petition should be dismissed (1) pursuant to Rule of Civil Procedure 12(b)(6) for failure to state a claim and (2) pursuant to the doctrines of *res judicata* and collateral estoppel. The Rule 12(b)(6) motion specifically asserted the juvenile petition failed to state a claim because "[t]he claims made in the Petition are a restatement of the claims previously made and litigated in" the CCO and IPO and, therefore, Petitioner was barred from relitigating these claims in the juvenile petition. The preclusion motion similarly asserted the CCO, IPO, and a 15 July 2022 temporary emergency custody order entered in the custody matter, including all findings of fact and conclusions of law that Father had not abused Alice, were binding on the trial court and warranted dismissal of the juvenile petition with prejudice. Father also filed one motion to hold Social Worker Dorman in contempt ("Contempt Motion") because she interviewed Alice on 29 August 2022 with full knowledge of the provisions of the CCO prohibiting anyone but Alice's therapists from discussing the prior allegations with Alice. One of Father's motions *in limine* requested Father be allowed to examine Dorman under oath regarding circumstances surrounding the nonsecure custody order, juvenile petition, and "the events occurring specifically as they relate to the minor child . . . since the entry of" the nonsecure custody order on 29 August 2022.

On 1 September 2022, the trial court held a hearing and allowed Father to examine Dorman. On 19 September 2022, the trial court entered a written order

dismissing the juvenile petition ("Dismissal Order"). Based on Dorman's testimony, the trial court found she was aware of the CCO and IPO before she interviewed Alice, that the CCO found Father did not abuse Alice, and that "[n]o one, other than the child's current, qualified therapist" was permitted to discuss the previous allegations against Father with Alice. The trial court found that, "[b]ased upon the four corners of the Petition filed in this cause there are no colorable allegations of abuse, neglect or dependency that are alleged to have occurred subsequent to the" CCO and IPO, and the prior allegations against Father had been previously litigated and could not form the basis for the juvenile petition. The trial court granted Father's Rule 12(b)(6) motion, preclusion motion, and motion *in limine* to examine Dorman; declared "it was not necessary for the Court to hear, and rule, upon Respondent-father's other Motions in this matter"; and dismissed the juvenile petition with prejudice.

Petitioner appealed; and, on 13 May 2024, while the appeal was still pending, Mother waived her right to counsel before the trial court. On 29 May 2024, we entered an order providing Mother until 14 June 2024 to file an appellee brief, if desired. Mother did not file an appellee brief within the allotted time window.

## ANALYSIS

On appeal, Petitioner presents four issues for our review: (1) whether Father gave Petitioner adequate notice of his motions to dismiss; (2) whether the trial court reviewed the juvenile petition under the correct standard when ruling on the Rule 12(b)(6) motion; (3) whether Petitioner was precluded by *res judicata* and collateral

estoppel from litigating the issues in the juvenile petition; and (4) whether the trial court abused its discretion by granting one of Father's motions *in limine* and sanctioning Social Worker Dorman.

We need not address the first issue because the second and third issues are dispositive; the trial court erred as a matter of law in granting Father's motions, and we must vacate the dismissal order. We do not address the fourth issue because the record indicates the trial court did not address Father's Contempt Motion or otherwise sanction Social Worker Dorman.[2]

## A. Preservation and Motion to Dismiss Appeal

We preliminarily address preservation of Petitioner's second and third issues for appellate review. Father argues both in his brief and in a separate motion to dismiss Petitioner's appeal filed before us that Petitioner waived appellate review of the trial court's rulings on his motions because Petitioner did not object during Father's arguments on his motions or the trial court's rendering of its ruling on his motions. But, here, Petitioner's issues were automatically preserved for review because Petitioner is very clearly challenging whether the trial court's decision to grant Father's motions is supported by its findings of fact and conclusions of law regarding the preclusive effect of the prior orders on the juvenile petition. Such issues

---

[2] As discussed above, the district court did not rule on Father's motions other than the Rule 12(b)(6) Motion, preclusion motion, and motion *in limine* seeking to examine Social Worker Dorman. The district court did not address contempt in the dismissal order other than to note Father filed the Contempt Motion.

are automatically preserved for review. *See* N.C. R. App. P. 10(a)(1) ("Any such issue that . . . was deemed preserved or taken without any such action, including, but not limited to, whether the judgment is supported by the verdict or by the findings of fact and conclusions of law, . . . may be made the basis of an issue presented on appeal."); *see also Brown v. Lumbermens Mut. Cas. Co.*, 90 N.C. App. 464, 467-68 (1988) (citations omitted) ("[P]laintiffs' notice of appeal is sufficient to raise the limited issues of law relevant to our review of Rule 12(b)(6) motions and summary judgments. We will therefore . . . address plaintiffs' basic contention that the face of the record shows that neither LMCC nor GMC were entitled to judgment as a matter of law."), *aff'd*, 326 N.C. 387 (1990). Because the two remaining issues are preserved for review, we deny Father's motion to dismiss this appeal and reach the merits of Petitioner's arguments.

## B. Motions to Dismiss

Both motions assert the doctrines of collateral estoppel and *res judicata* barred Petitioner from relitigating allegations of abuse in the juvenile petition that predate the CCO and IPO. A review of the record indicates the trial court determined, as a matter of law, that both the Rule 12(b)(6) motion and preclusion motion should be granted because the doctrines of collateral estoppel and *res judicata* operated to bar Petitioner from relitigating allegations in the juvenile petition that were litigated in

both the CCO and IPO.[3]  We first address the underlying issue of law, whether collateral estoppel or *res judicata* could form the basis for granting either motion to dismiss based on the findings and conclusions in the CCO, before more specifically addressing dismissal under Rule 12(b)(6).

### 1. *Preclusion Motion*

Whether a court is barred by collateral estoppel or *res judicata* "is a question of law unrelated to any specific facts of a case.  Questions of law are reviewed *de novo*." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 678, *disc. rev. denied*, 362 N.C. 679 (2008).  "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re K.S.*, 380 N.C. 60, 64 (2022) (marks and citations omitted).

Although the parties' dispute pertains to both collateral estoppel and *res judicata*, the present dispute is most squarely governed by collateral estoppel. Collateral estoppel prevents "the subsequent adjudication of a previously determined [factual] issue, even if the subsequent action is based on an entirely different claim." *Whitacre P'ship v. Biosignia, Inc.,* 358 N.C. 1, 15 (2004).  "Under the doctrine of collateral estoppel, or issue preclusion, a final judgment on the merits prevents

---

[3] Most of the trial court's findings of fact indicate it based its ruling as to Father's motions on the preclusive effect of the CCO.  However, a review of the dismissal order indicates that the trial court also noted "there are no colorable allegations of abuse, neglect or dependency that are alleged to have occurred subsequent to" the IPO.  Especially given the heavy discussion of the CCO in the IPO, we believe the trial court correctly considered the preclusive effect of both orders.

relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *Johnson v. Starboard Ass'n, Inc.*, 244 N.C. App. 619, 627 (2016)  (marks omitted) (citing *State ex rel. Tucker v. Frinzi,* 344 N.C. 411, 414 (1996)).  "Collateral estoppel will apply when: (1) a prior suit resulted in a final judgment on the merits; (2) identical issues were involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined." *Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 193 (2005) (marks omitted).  For present purposes, we see no meaningful dispute that both the CCO and IPO were final judgments on the merits, contained at least some overlapping factual issues with the present juvenile petition, and were actually litigated and determined.  Moreover, for purposes of privity,[4] we note that both Carteret and Craven County DSS intervened in the custody action; and, as co-actors with respect to this family and arms of the State, we do not see a reason to treat them as analytically distinct with respect to the

---

[4] We note that the significance of privity as a component of collateral estoppel has been somewhat murky as applied by our Court, with some cases acknowledging privity as an essential element of collateral estoppel, *see Perryman v. Town of Summerfield*, 899 S.E.2d 884, 893 (N.C. Ct. App. 2024); *Green v. Carter*, 900 S.E.2d 108, 114 (N.C. Ct. App. 2024); *Johnson*, 244 N.C. App. at 627, and others omitting mention of it altogether, *see Collier v. Bryant*, 216 N.C. App. 419, 423 (2011); *Youse*, 171 N.C. App. at 193.  The cause may be that, when our Supreme Court last spoke at length on the topic, it was unclear whether the concept of privity was subsumed into the requirement that "the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." *Whitacre*, 358 N.C. at 15, 35-37 (omitting privity from the basic definition of collateral estoppel while noting later in its analysis that privity is required for collateral estoppel to apply).  Without further guidance, we do not intend for this opinion to resolve any outstanding ambiguity as to the role of privity in collateral estoppel cases, only to explain why we discuss privity when some of our other cases have not; we think it the better practice to err on the side of inclusion.

IPO.

The more meaningful dispute, we think, is whether collateral estoppel applies in this case given the discrepancy in the standard of review between the CCO and the present litigation. DSS argues, citing our holding in *In re K.A.*, that "collateral estoppel cannot apply where the proceedings involve a different burden of proof." *See In re K.A.*, 233 N.C. App. 119, 127 (2014) (citing *State v. Safrit*, 154 N.C. App. 727, 729 (2002), *disc. rev. denied*, 357 N.C. 65 (2003)). However, this was an overstatement—and oversimplification—of the existing law, directly contradicting long-established precedent and failing to fully recognize the conceptual underpinnings of collateral estoppel. North Carolina's appellate courts have, for nearly two centuries, recognized the availability of collateral estoppel as between a prior criminal proceeding and a subsequent civil proceeding, directly contradicting the idea that a mere difference in burdens of proof renders the doctrine inapplicable. *Mays v. Clanton*, 169 N.C. App. 239, 242 (2005) (citing *Burton v. City of Durham*, 118 N.C. App. 676, 680 (1995) and *Hill v. Winn–Dixie Charlotte, Inc.*, 100 N.C. App. 518 (1990)) ("[T]his Court has upheld collateral estoppel of an issue in a civil suit when that issue was previously established as an element in a criminal conviction."); *Griffis v. Sellars*, 20 N.C. 315, 315 (1838) ("In an action for a malicious prosecution, a verdict and judgment of conviction in a Court of competent jurisdiction[] . . . is conclusive evidence of probable cause, and precludes the plaintiff in the action for the malicious prosecution from showing the contrary."). These cases demonstrate that the actual

principle animating the result in *In re K.A.* was that collateral estoppel cannot apply to a proposition proven in a prior action when the subsequent action involves a *higher* standard of proof.

Nonetheless, even this statement falls short of explaining the whole of collateral estoppel. Our caselaw, when viewed holistically, demonstrates that collateral estoppel operates on a system of transitivity; a factual proposition is deemed true or false in the subsequent action if the truth value of the proposition in that action logically follows from the truth or falsehood of the same proposition in the prior action, bearing in mind the relative burdens of proof. Put differently, assume that the extent to which a given proposition is proven in a prior case is quantifiable as a number X; that the minimum confidence threshold at which any proposition is deemed proven in a prior case—in other words, the burden of proof—is quantifiable as a number A; and that the minimum confidence threshold at which at which any proposition is deemed proven in a subsequent action is quantifiable as a number B. In such a system, knowing the relationship between X and A, as well as the relationship between A and B, can—but does not always—necessarily imply a relationship between X and B.

Our caselaw bears this out. For example, the above-referenced holdings applying collateral estoppel in a prior criminal case to a subsequent civil case, *see Mays*, 169 N.C. App. at 242, *Griffis*, 20 N.C. at 315, are expressions of the principle that, if X equals or exceeds A and A exceeds B, then X must exceed B. The outcome

of these holdings is an expression of the broader transitive relationship outlined above.

Our holding in *In re: K.A.* is, taken in context, also an expression of this broader transitive relationship. In *K.A.*, the trial court declined to apply collateral estoppel where there was affirmative finding of abuse in a prior custody order. *In re K.A.*, 233 N.C. App. at 127. The subsequent action—a juvenile abuse, neglect, and dependency case—was subject to a higher standard of proof than the first. *Id.* In other words, if X equals or exceeds A but A is less than B, we cannot know the value of X relative to B.

Finally, in *Fox v. Johnson*, we demonstrated, consistent with the same transitive relationship, that the doctrine continues to apply when discussing a *failure* to meet a burden:

> It is well settled that "[a] dismissal under [North Carolina Rule of Civil Procedure] Rule 12(b)(6) operates as an adjudication on the merits unless the court specifies that the dismissal is without prejudice." *Hoots v. Pryor,* 106 N.C. App. 397, 404[] . . . (citations omitted), *disc. review denied,* 332 N.C. 345[] . . . (1992); *see also* [N.C.G.S.] § 1A-1, Rule 41(b) (2013). However, the federal court did not dismiss Plaintiffs' federal claims under North Carolina Rule 12(b)(6), but rather dismissed them pursuant to Federal Rule 12(b)(6). *See Fox,* 807 F.Supp.2d at 484. No North Carolina case law or statute that we have discovered directly addresses the question of whether a dismissal under Federal Rule 12(b)(6) operates as an adjudication on the merits so as to collaterally estop a plaintiff from re-litigating a claim or issue in our State's courts. Of course, if the evaluation of a claim in light of a motion to dismiss pursuant to Federal Rule 12(b)(6) were identical to the

evaluation made in response to a motion under North Carolina Rule 12(b)(6), it would be clear that the federal court's dismissal had adjudicated and settled the same issue Plaintiffs raise in their state complaint. However, our review of the pertinent statutes and case law demonstrates that the standard under Federal Rule 12(b)(6), which the federal court here held Plaintiffs failed to meet, is a different, *higher* pleading standard than mandated under our own General Statutes. In other words, the fact that Plaintiffs' allegations of proximate cause in the federal complaint did not meet the pleading standard under Federal Rule 12(b)(6) does not *necessarily* mean that their allegations of proximate cause would have resulted in dismissal pursuant to North Carolina Rule 12(b)(6).

*Fox v. Johnson*, 243 N.C. App. 274, 285 (2015), *disc. rev. denied*, 368 N.C. 679 (2016).

We see in *Fox* that, if X is less than A but A is greater than B, we cannot necessarily know whether X is also less than B or somewhere between B and A. *See also Hussey v. Cheek,* 31 N.C. App. 148, 149 (1976) ("When the burden of proof at the second trial is less than that at the first, the failure to carry that burden at the first trial cannot raise an estoppel to carrying the lesser burden at the second trial."); *Safrit*, 154 N.C. App. at 729 (holding that the prior failure to establish Defendant's existing convictions under a beyond a reasonable doubt standard did not preclude a subsequent finding that those convictions took place under the lower preponderance standard).

As it pertains to this case, "the applicable standard of proof in child custody cases is by a preponderance, or greater weight, of the evidence[,]" *Speagle v. Seitz*, 354 N.C. 525, 533 (2001) (citations omitted), and "[t]he standard of proof for an

adjudicatory order entered on a petition alleging abuse, neglect, or dependency in a juvenile matter[] . . . is 'clear and convincing evidence.'" *In re K.A.*, 233 N.C. App. at 127 (quoting N.C.G.S. § 7B-805 (2013)); *see also* N.C.G.S. § 7B-805 (2023) ("The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence."). "Clear and convincing evidence is [a] greater [standard] than the preponderance of the evidence standard required in most civil cases." *In re A.K.*, 178 N.C. App. 727, 730 (2006) (marks and citations omitted). Moreover, the proposition that the movant was required to prove in both cases was that Father abused Alice—a proposition which, under the preponderance standard, the trial court ruled had not been proven in the CCO. In other words, in keeping with the earlier model, we know that X (Father abused Alice) is less than A (preponderance of the evidence), and we know that A is less than B (clear and convincing evidence). Since we can necessarily deduce from this relationship that X must also be less than B, collateral estoppel applies to the issue of whether Father abused Alice. The doctrine therefore precludes a contrary finding in the present action, and the trial court properly invoked it as to the allegations of abuse against Father already covered by the CCO.

Any future litigants, of course, need not cite our holding in this case in algebraic terms; it is enough to say that, where a party fails to establish a fact in a prior case under a lower burden of proof, collateral estoppel applies to preclude a subsequent finding that the same fact has been established under a higher standard

of proof.

Having established the preclusive effect of the CCO, we now turn to the preclusive effect of the IPO. This analysis is far simpler: The burdens of proof applicable to both the interference petition and the juvenile petition were clear and convincing evidence, *see* N.C.G.S. § 7B-805 (2023), so collateral estoppel naturally applies to the failure to prove abuse. As the IPO's conclusions that Father had not been shown to abuse Alice were determinative as to the allegations through those alleged in the interference petition, this means that, in addition to the preclusion of the allegations contained in the CCO, the IPO also precludes the allegations arising in the timeframe it alleged; namely, 28 March 2022. Thus, these issues were also correctly dismissed by the trial court as barred by collateral estoppel.

Nonetheless, to the extent the trial court held that *all* factual allegations in the juvenile petition were barred by collateral estoppel, thereby justifying its dismissal in the entirety, this ruling was too broad. Specifically, we note that the juvenile petition appears to further allege instances of abuse taking place in July 2022, supported by evidence gathered through at least August of 2022. These allegations, which were not estopped by the earlier orders, render dismissal inappropriate. Accordingly, the trial court correctly ruled estopped most, but not all, of the factual issues in the juvenile petition; but, since factual issues pertaining to allegations after March of 2022 remain, the trial court erred in dismissing the entire petition.

### 2. *Rule 12(b)(6) Motion*

The trial court also granted the Rule 12(b)(6) motion and found "there are no colorable allegations of abuse, neglect or dependency that are alleged to have occurred" after the CCO and IPO. As to a Rule 12(b)(6) motion to dismiss,

> this Court reviews *de novo* whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted. We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim.

*In re K.G.*, 260 N.C. App. 373, 376 (2018) (citations omitted). Nevertheless,

> the review of an order granting a Rule 12(b)(6) motion to dismiss does not involve an assessment or review of the trial court's reasoning. Rather, the appellate court affirms or reverses the disposition of the trial court—the granting of the Rule 12(b)(6) motion to dismiss—based on the appellate court's review of whether the allegations of the complaint are sufficient to state a claim.

*Taylor v. Bank of Am., N.A.*, 382 N.C. 677, 679 (2022). Therefore, we ordinarily ignore the trial court's rationale in granting a Rule 12(b)(6) motion to dismiss. But, here, because the trial court determined the juvenile petition failed to state a claim based on the idea that collateral estoppel and *res judicata* precluded Petitioner from asserting the entire spectrum of abuse allegations contained therein, we note that, to the extent the trial court's ruling on the Rule 12(b)(6) motion was based on collateral

estoppel and *res judicata,*[5] it is erroneous, in part, for the same reasons as above. *See supra* Part B-2.

As to whether the juvenile petition states a claim, Chapter 7B specifically provides that a valid petition must include "allegations of facts sufficient to invoke jurisdiction over the juvenile[,]" N.C.G.S. § 7B-402 (2023), including allegations that the juvenile is abused, neglected, or dependent. *See* N.C.G.S. § 7B-200 (2023) ("The court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent."). An abused juvenile, neglected juvenile, and dependent juvenile are specifically defined in Chapter 7B. *See* N.C.G.S. § 7B-101 (2023) (defining abuse, neglect, and dependency). For purposes of the instant appeal, a juvenile whose parent commits a sex offense defined by Chapter 14 upon the juvenile is abused. *See* N.C.G.S. § 7B-101(1)(d) (2023). A neglected juvenile is one whose parent "[d]oes not provide proper care, supervision, or discipline[,]" or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15)(a), (e) (2023). And a dependent juvenile is

> [a] juvenile in need of assistance or placement because (i) the juvenile has no parent . . . responsible for the juvenile's care or supervision or (ii) the juvenile's parent . . . is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.

N.C.G.S. § 7B-101(9) (2023).

---

[5] As discussed above, while the preclusion motion discusses both *res judicata* and collateral estoppel, collateral estoppel is the more directly applicable doctrine.

Here, the juvenile petition contained sufficient allegations to state a claim that Alice was an abused, neglected, and dependent juvenile within the meaning of Chapter 7B despite the partially preclusive effect of the CCO and IPO. The petition alleged that Alice was abused and neglected because Father sexually abused Alice, and at least some of these alleged acts occurred after those already ruled upon in the CCO and IPO. The petition specifically alleged that Father committed an enumerated sex offense under Chapter 14 against Alice and that such abuse constituted improper supervision and created an injurious environment for Alice. The petition also alleged that Alice was dependent because neither of her parents were appropriate caregivers—Father was an inappropriate caregiver due to the allegations of sexual abuse, and Mother was an inappropriate caregiver due to the allegations that she had coached Alice to accuse Father of sexual abuse—and there was no other caregiver available on either side of Alice's family.

Considering all of the remaining factual allegations, the juvenile petition was sufficient to state a claim under Chapter 7B, even when excluding factually precluded subject matter. However, we further note that Father's pending motions before the trial court may—depending on the relief granted, if any—result in the striking of some or all of the petition, which may, by extension, affect the appropriateness of any further Rule 12(b)(6) rulings on remand. In light of this potential, rather than reversing the dismissal order, we vacate the order and remand for consideration of whether, after resolution of all potentially relevant motions and in light of our

holding, any allegations remain for purposes of Rule 12(b)(6).

## **CONCLUSION**

The allegations in the juvenile petition were not fully barred by the doctrine of collateral estoppel, and the factually precluded portions of the juvenile petition did not themselves merit dismissal under Rule 12(b)(6).  As our holding with respect to collateral estoppel unmoots some number of motions potentially impacting the materiality of the remaining factual allegations in the juvenile petition, the dismissal order is vacated and the case remanded for further proceedings.

VACATED AND REMANDED.

Judges COLLINS and HAMPSON concur.