An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-221

Filed 19 November 2025

Haywood County, Nos. 23JA000051-430, 23JA000052-430, 23JA000053-430

IN THE MATTER OF:

G.Y., C.Y., and S.Y.

Appeal by respondents from a disposition orders entered 9 August 2024 and an adjudication order entered 26 November 2024 by Judge Donna F. Forga in Haywood County Superior Court. Heard in the Court of Appeals 29 October 2025.

> *Law Office of Jason R. Page, PLLC, by Jason R. Page, for respondent-appellant mother.*
>
> *Ewing Law Firm, P.C., by Robert W. Ewing, for respondent-appellant father.*
>
> *Parker E. Smith, for petitioner-appellee, Buncombe County Department of Health and Human Services.*
>
> *Parker Poe Adams and Bernstein, LLP, by Stephen V. Carey and Deborah S. Stern, for respondent-appellee, Guardian ad Litem.*

DILLON, Chief Judge.

Respondent Mother and Respondent Father file separate briefs appealing from

a disposition order granting custody to Petitioner Buncombe County Department of Health and Human Services entered based on a prior order adjudicating their three sons neglected juveniles. While there was sufficient evidence offered at the adjudication hearing to support an adjudication of neglect, because the trial court's findings of fact do not support that adjudication, we vacate both orders and remand to the trial court for further proceedings.

## I. Background

Greg, Chris, and Sam are the biological children of Respondents.[1] On 19 December 2022 Buncombe County Department of Social Services ("BCDSS") accepted a report alleging neglect of the children. In sum, the report alleged substance abuse issues by Respondents, domestic violence between Respondents, and unsanitary living conditions.

For approximately one month, BCDSS attempted to investigate the report allegations without success. Due to BCDSS's inability to access the children, a trial court granted a BCDSS obstruction petition requiring Respondents to allow BCDSS to access the children. A BCDSS social worker, Andi Cooper ("SW Cooper") interviewed the children on 21 February 2023 at Respondents newly purchased home in Waynesville ("Waynesville home"). Respondents, Sam, and Chris denied the report allegations. Greg did not provide information due to his young age.

---

[1] We use pseudonyms to protect the juveniles' identities. N.C. R. App. P. 42(b).

During the visit, SW Cooper learned the children did not live in the Waynesville home. Rather, the children lived next door with Respondent Mother's adult daughter, K.C. Following SW Cooper's interview, Respondents entered into a temporary safety plan with BCDSS for the children to continue living with K.C. among other restrictions placed on Respondents.

A week or two after SW Cooper's initial interview, the following events occurred: Respondent Father was arrested and charged with trafficking in opium or heroin and pleaded guilty; BCDSS received a report alleging K.C. caused Sam to have a black eye; a Haywood County Department of Social Services ("HCDSS")[2] social worker, Samantha Byerly, visited K.C.'s home to investigate the black eye incident; and BCDSS took 12-hour nonsecure emergency custody of the children.

On 8 March 2023, the same day BCDSS took custody of the children, BCDSS filed a petition alleging Respondents neglect of the children. Following an adjudication hearing pursuant to N.C.G.S. §§ 7B-801 and 7B-807, the trial court filed and entered written orders adjudicating Greg, Chris, and Sam as neglected juveniles within the meaning of N.C.G.S. § 7B-101(15). A disposition hearing occurred following the adjudication hearing and an order was entered. No permanent plan(s) have been set. BCDSS has not filed petitions to terminate Respondents parental rights. Respondents appealed.

---

[2] BCDSS called HCDSS to assist because the family moved from Buncombe County to the Waynesville home in Haywood County during the investigation period.

II.     Analysis

Respondents file separate briefs challenging the trial court's adjudication order.   Both Respondents argue that the findings in the adjudication order are deficient in various ways.   We agree.

It is the role of our Court to "examine whether the record of the proceedings demonstrates that the trial court, through processes of logical reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case." *In re J.W.*, 241 N.C. App. 44, 45–49 (2015).    Each is addressed in turn.

Respondents make various arguments regarding Findings of Fact No. 7 of the adjudication order.   This finding spans five pages of the adjudication order and contains eighteen sub-findings.   Many of these sub-findings are divided into sub-parts.   Finding 7 begins by stating "[t]hat on or about [19 December 2022], [BCDSS] accepted a report . . . in which it was alleged that . . . ."   However, many of the sub-findings recite events which occurred after 19 December 2022, and others recite findings which were made in subsequent orders.   For instance, Findings 7(f) states "[t]hat on or about [13 January 2023], [BCDSS] filed a Petition . . ." alleging that various events occurred, which would suggest that on 19 December 2022, BCDSS accepted a report that alleged that BCDSS had filed a petition a month later.   In sum, it is difficult to follow the trial court's logical reasoning concerning Finding of Fact No. 7 as it is not clear which of the sub-findings the trial court was actually adopting as its own finding as fact and which the trial court was merely reciting.   *See In re*

*O.W.*, 164 N.C. App. 699, 703 (2004) (holding there is no finding at all when the trial court merely restates testimony or evidence which is reciting another report or person).

Finding of Fact No. 7 contains many of the "findings" relevant to support the statutory definition of neglect based on Respondents' failure to provide proper care, supervision, or discipline, and/or Respondents' creation of an injurious living environment.[3] *See* N.C.G.S. § 7B-101(15)(a), (e). However, because most of the relevant portions of Finding of Fact No. 7 do not contain proper findings, are mere recitations of record evidence or testimony, or are not supported by evidence presented at the adjudication hearing, there are not sufficient evidentiary findings to permit this Court to conduct a meaningful review of the conclusion of neglect.

We further note that in Finding of Fact No. 17, the trial court stated that it was adopting the findings as found in certain prior orders, for instance a prior obstruction order. Respondent Mother contends the trial court erred in taking notice of the facts in the obstruction petition because the trial court orally indicated during the adjudication hearing it would *not* take judicial notice of the underlying facts. Respondent Mother is correct.

"A trial court may take judicial notice of earlier proceedings in the same cause."

---

[3] E.g., Respondents' substance abuse, unsanitary living conditions, malnourishment of the children, the children's use of illegal substances, domestic violence between Respondents, the children are left home unattended, etc.

*In re Isenhour,* 101 N.C. App. 550, 553 (1991) (citation omitted). Judicial notice may be taken when the fact is "one not subject to reasonable dispute" because it can be readily determined by reliable sources. N.C.G.S. § 8C-1, Rule 201(b). Generally, a written order prevails over the oral rendition of the order. *In re O.D.S.,* 247 N.C. App. 711, 721 (2016).

Here, the issue is whether the trial court's oral pronouncement regarding not findings in the obstruction petition or the written adjudication order findings in the obstruction petition controls. The trial transcript makes clear the trial court did not take judicial notice of the underlying facts in the obstruction petition, only the petition file. *See* T. at 101–02 ("Then I will not find those as facts, based on this obstruction order."). However, the adjudication order indicates the Court took judicial notice of the obstruction order *and* the obstruction order's findings of fact. *See In re K.A.,* 233 N.C. App. 119, 128 n.4 (2014) (stating "[t]aking judicial notice of the existence of an order . . . is not the same thing as taking judicial notice of each of the facts resolved in that order.").

The trial court's pronouncement in open court not finding the findings in the obstruction petition does not conform to the court's adjudication order. The adjudication order language must prevail because it is the written order. *See In re O.D.S.,* 247 N.C. App. at 721–22. However, because the findings of facts within the obstruction order are not supported by clear, cogent, or convincing evidence at the adjudication hearing, Finding of Fact No. 17 cannot support an adjudication of

neglect.

## III. Conclusion

In sum, the trial court's evidentiary findings are not supported by clear, cogent, and convincing evidence which, in turn, cannot allow a sufficient review of the adjudication of neglect by this Court. We vacate the adjudication order and the disposition order and remand the matter to the trial court to make appropriate findings of fact, as evidence may support a finding of neglect, if so properly found by the trial court. On remand, the trial court may, in its discretion, hold a new hearing and hear new evidence.

VACATE AND REMAND.

Judges HAMPSON and STADING concur.

Report per Rule 30(e).